PADGETT v. CLEVELAND.

1. The doctrine of fixtures, especially as applicable to articles used for manufacturing purposes, considered.
2. Plaintiff took a mortgage of real estate on which was an engine and several other articles used in the manufacture of doors and sashes. This engine was afterwards removed and a larger one purchased and placed in position. The works being destroyed by fire, this new engine and the other machinery were removed to another place and there mortgaged to other parties, who on default seized and sold to a stranger. Plaintiffs then brought this action against the chattel-mortgagees and purchaser to recover this engine and the other articles, claiming them under his real estate mortgage. *Held*, that he was not entitled to any recovery in this action.

Before FRASER, J., Spartanburg, August, 1889.

This was an action by J. R. Padgett against John B. Cleveland and others, D. E. Converse, Jane Wilkes, and C. P. Sanders, assignee, commenced February 29, 1888. Plaintiff claimed under a mortgage which was duly recorded in the real estate mortgage book, but never recorded in the chattel mortgage

book.   The purchase of the second engine from the Mecklen-burg Iron Works was made February 23, 1886, but the contract was not recorded until April 18, 1887.   Between these two last dates, Cleveland and others made a loan to Tanner & Lemas-ter and secured it by their mortgage.   Other matters are stated in the opinion:

The Circuit decree was as follows :

The master has found that machinery to the value of two hun-dred and seventy-four dollars and fifty cents was attached to the freehold and passed under the real estate mortgage given by Tanner to the plaintiff.   Machinery thus attached is on the bor-der line between realty and personalty, where intention has very much to do with determining on which side of that line it will fall.   This machinery was solemnly dedicated to the purposes of the realty by the mortgage and ranked with the buildings, which are clearly realty.   Being thus appropriated by one member of the firm of Tanner & Lemaster, and for the purposes of the firm, it is too late now for one member of the firm, or both of them, or any one claiming under them, to object.   The recording of the mortgage within the proper time is sufficient notice to all the world of its contents.

As to all the articles of machinery put on the real estate after the execution of the real estate mortgage, the mortgagors had a right to sever and remove them.   This might perhaps have been prevented by injunction, but when accomplished peaceably and without objection, this machinery at once lost its character as real estate and became again personalty.   I do not think that it can be followed by the mortgagee of the realty, but it is not now be-fore me whether it is subject to any chattel mortgages which have been set up in this case.

The question raised between the co-defendants as to the ma-chinery not attached to the freehold at the execution of the real estate mortgage cannot be settled in this case, and this case is a good illustration of the propriety of such a sale.   One of the co-defendants having demanded and properly failed to obtain the copy of the answer containing the cross-demand against him, it is therefore not necessary to consider many of the questions raised before the master and by the exceptions to his report.

The machinery attached to the freehold at the date of the real estate mortgage can be followed as long as its identity is not lost, and stands upon a different footing from brick and timber and such articles as cannot be identified  These articles seem to have been sold at a fair market value.  Cleveland did not get enough for them to pay his own debt in full in any event, and the offer to pay more for it than he had agreed to sell it for, seems to have been made more to meet supposed exigencies of an expected trial than to induce him to make another and public sale.  Having held that this machinery was not personalty, but a part of the realty, the statute as to the sale of personal property under mortgage does not apply; but if it did, in no event can the person who sells property under mortgage be required to account for more than the real value, and this the master has found.

It is therefore ordered and adjudged, that the report of the master be confirmed and made the judgment of this court, and that parties have leave to apply for such administrative orders as may be proper to carry out this decree.

From this decree the parties appealed upon the grounds set out in the opinion.

*Messrs. Carlisle & Hydrick*, for plaintiff.

*Messrs. Bomar & Simpson*, for defendants, appellants.

October 1, 1890.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN.  It will be useful to make a short consecutive statement of the facts of this case.  In 1885, Alonzo Tanner was the owner of three lots of land at Cowpens, in Spartanburg County.  In December of that year he and one Lemaster formed a partnership under the firm name of "Tanner & Lemaster," by which they agreed to go into the business of manufacturing "doors, sash, and blinds."  Between that time and February, 1886, they bought in the firm name the necessary machinery, and by February they were ready for business.  The machinery was put in position in a house on one of the lots of Tanner.  How it was attached, if attached to the freehold, was one of the questions in the case.

On February 18th, 1886, Tanner gave his note to the plaintiff for $2,000, and secured it by a mortgage of the lot on which the machinery was situated, "together with all the machinery and buildings on said lot, consisting of one engine, one planer, one moulder, one tenoner, mortiser, turning-lathe," &c. This mortgage was recorded in the real estate book, but not in the chattel mortgage book, of the R. M. C. office of the county. A short time after the plaintiff's mortgage was executed, "the engine" then in the factory was sold and a larger one purchased from the "Mecklenburg Iron Works" (Wilkes), the title to remain in the vendor until paid for. In April, 1886, the factory at Cowpens was consumed by fire, and afterwards (August) the engine and the machinery which had escaped the fire were removed to the town of Spartanburg, and there placed in position as it had been at the Cowpens, in a house rented for three years, from one Mills, for that purpose; and the business was continued as before.

After this removal and location at Spartanburg, Tanner & Lemaster executed two chattel mortgages of the machinery in the shops at Spartanburg to the defendant, Cleveland, and others, which were regularly recorded, and on March 9th, 1887, they gave to Wilkes another mortgage on this same machinery. In September, 1887, a day or two, as stated, before the assignment, at the instance of one of the partners, and with the knowledge and consent of the other, Cleveland, for himself and others, sold at private sale the property embraced in their mortgage to one Converse, as claimed and found, for full value. And on September 3rd, 1887, Tanner & Lemaster made an assignment for the benefit of their creditors to the defendant, C. P. Sanders, Esq.

This action was commenced on February 29th, 1888, to foreclose the plaintiff's mortgage, and asking relief against Cleveland and others for the machinery and engine sold by them, which, as he alleged, were attached to the soil of the Cowpens lot, and thereby became real estate, "fixtures," and as such passed under his mortgage prior to the alleged chattel mortgage. The issues were referred to the master, who found that Lemaster had no interest in the property covered by the plaintiff's mortgage at the time it was given; that the money borrowed from plaintiff went into

the business of the factory; that Lemaster knew of and consented to the mortgage to the plaintiff; that the machinery which was in the factory when plaintiff's mortgage was taken was intended to become a permanent improvement to the real property, and was embraced in the mortgage to plaintiff as part of the buildings thereon. These findings were concurred in by the Circuit Judge, who held: 1st. That the machinery on Tanner's lot at the execution of Padgett's mortgage was real estate, and could be followed wherever identified, and gave plaintiff judgment against Cleveland and others for its value. 2nd. That they were not responsible for the machinery afterwards put on the lot and removed to Spartanburg. 3rd. That Wilkes was not entitled to any relief against her co-defendants, Cleveland and others.

From this decree Cleveland and other defendants appealed on the following grounds: "I. Because the Circuit Judge erred in holding that the machinery, for the value of which judgment was rendered, was attached to the freehold, became real estate, and a mortgage thereof on the real estate mortgage book was constructive notice of such mortgage to all subsequent mortgagees. II. Because the Circuit Judge erred in holding that said machinery was intended to become real estate, and in not holding that it was never the intention of either of the partners that any of the machinery owned by them both should ever become a part of and go with the lot on which it was situated. III. Because the Circuit Judge erred in holding even if said machinery had been a part of the real estate, after it became detached, that it could be allowed (followed) with the real estate mortgage as long as it could be identified. IV. Because the Circuit Judge erred in making by his decree the property for the value of which he gave judgment, liable for Tanner's individual debt to plaintiff, before it could be applied to defendants' partnership debt, when the property was partnership property. V. Because the Circuit Judge erred in not ruling that certain testimony (admitted by the master) was improperly admitted. VI. Because the Circuit Judge erred in not at least ruling one way or the other upon the question of the admissibility of the testimony referred to in the last preceding exception. VII. Because the Circuit Judge erred in not finding that if plaintiff was entitled to any relief, it should have been

only to have the machinery, covered by his mortgage, sold for the collection of his debt, and in holding that plaintiff was entitled to judgment absolutely against defendant for illegal sale of same."

The plaintiff appeals, charging that the judge committed error: "1st. In not holding that, at least against the defendants, appellants, the engine and boiler bought by Tanner & Lemaster from Wilkes, and placed on the premises covered by plaintiff's mortgage, became a fixture and subject to the lien thereof, and that the record thereof was sufficient notice to the defendants of said lien. 2nd. In holding that as to all articles of machinery put on the real estate after the execution of plaintiff's mortgage, the mortgagors had a right to sever and remove them; and that as they had been so removed, they at once lost their character as real estate, and became again personalty which could not be followed by the mortgagee of realty."

He also gave notice that if the decree could not be sustained in other respects complained of by the defendants, on the grounds stated by the Circuit Judge, he would ask that it be sustained on the grounds: "1st. That the defendants, appellants, had actual notice of the plaintiff's mortgage. 2nd. That the defendants, appellants, did not have valid and legal mortgages of the property of Tanner & Lemaster."

As defined in some of the books, "a fixture is an article which was a chattel, but by being physically annexed to the realty by one having an interest in the soil, becomes a part and parcel of it." This may suffice to give a general idea, but as a distinguished judge has said: "It is difficult to define the term, and there is inextricable confusion both in the text books and adjudged cases as to what is such annexation of chattels to realty as to make them part and pass by a conveyance of the realty. Any attempt to reconcile the authorities on the subject would be futile, and to review them would be an endless task." We think, however, the general statement may be safely made, that in the later cases there has been a decided relaxation as to the original rule of the common law, which subjected everything affixed to the freehold to the law governing the freehold; and that this modern relaxation has been effected chiefly in favor of trade. "As a general rule, all things that are annexed to the land be-

come a part of it; but to this there are exceptions, as where there is a manifest intention to use the alleged fixtures in some employment distinct from that of the occupier of real estate, as where the chattel has been annexed for the purpose of carrying on trade, it is not, in general, considered as part of the realty." *Evans* v. *McLucas*, 15 S. C., 70.

Besides this confusion in the law, some of the facts of this case are not as full and clear as they might be, and whether an article of personal property has been so annexed to the soil as to make it a permanent fixture and as such not movable, is always a mixed question of law and fact. It must also be kept in mind that the effort here is not to make the parties liable for the machinery by force of the terms of the mortgage—"together with the machinery, consisting of one engine, one planer," &c., &c., for in that aspect these articles must be considered as mere chattels, included in the mortgage with the lot. But the effort is to recover for these articles, as part of the freehold, under the mortgage of the lot itself, on the doctrine in relation to fixtures.

First. As to the plaintiff's grounds of appeal, which complain of error on the part of the judge in not holding that the engine placed in position on the lot at the Cowpens after the execution of plaintiff's mortgage, thereby became a fixture, and as a part of the realty passed under the mortgage of the lot, which had been previously executed. The mortgage did make mention of "one engine," but there was no identification. On the contrary, it appeared that the engine which was on the lot when the mortgage was executed had been sold, and the "engine" now in question was afterwards purchased from Mrs. Wilkes of the "Mecklenburg Iron Works," under an express stipulation and condition that "the title should remain in the vendor until paid for." This engine was placed in position at the Cowpens. That factory was burned, and it was severed and carried to Spartanburg, and again placed in position there, on a lot leased for three years. Afterwards Tanner & Co. mortgaged it to Cleveland and others for advances. It was again severed and sold by Cleveland for himself and others at private sale for, as alleged, full value towards the payment of their debts.

Under these circumstances we can hardly think it necessary to

inquire critically into the particular manner in which the engine was attached to the Cowpens lot mortgaged to the plaintiff. Whether an article of personal property is or is not made a fixture, must depend to a considerable extent upon the circumstances and the intent of the parties. Tanner & Lemaster did not have the absolute title to the engine, so as to authorize them to dedicate it for the benefit of a mortgage already executed; and without the consent of the vendors they could not, if they had wished to do so, make the engine a permanent part of the lot mortgaged; nor do we think, from their subsequent conduct, that they had any such intention. No wrong was done to the plaintiff.

As to all the articles of machinery put on the lot after it had been mortgaged to the plaintiff, we agree with the Circuit Judge, that the mortgagors had the right to sever and remove them, and dispose of them by mortgage or otherwise as their own property.

Second. As to the appeal of the defendants, which make substantially the following questions : First. That the articles of machinery on the lot when the plaintiff's mortgage was executed, were not attached to the soil in such manner or under such circumstances as to make them fixtures, and pass as a part of the lot itself under the mortgage ; but remaining chattels merely, as to them the real estate mortgages were not properly recorded. Second. That even if said articles of machinery were once attached to the soil so as to make them fixtures, yet after they were detached they became mere personalty again, and could not be followed as real estate under a real estate mortgage. Third, But if the plaintiff were entitled to any relief whatever, it should have been limited to having such specific fixtures sold towards the payment of his debt, instead of giving him an absolute judgment for the alleged value of said articles *in solido.*

The question as to the articles of machinery on the lot when the plaintiff's mortgage was executed, is not quite so clear as that in respect to the engine, which was placed upon the lot after the mortgage was executed, and which has just been disposed of. The master, among other things, found that "there was on the land the following machinery, attached as hereinafter described. One engine and boiler [disposed of], one planer, one 'moulder, one tenoner, one mortiser, one turning-lathe, jig-saw, rip-saw,

emery wheels and stand, grindstone, and iron vise, and also belting, shafting, and other attachments. All these articles were under frame buildings, and were fastened in the usual way in which machinery in operation is attached. The boiler was bricked up, and the engine was put upon a stationary foundation. Trenches were dug and heavy timbers embedded in the soil on which the engine, planing machine, and boring machine were fastened. The jig-saw was fastened to the ground and to the building, and the shafting was attached to the building and to the other machinery. This machinery was used in the operation of "a door and sash factory," upon the land of Alonzo Tanner, and it was intended by him, when he placed it there, so far as he had any intention at all in regard to the matter, to become a permanent improvement to the real property," &c. The judge held that the machinery was "solemnly dedicated to the purposes of the realty by the mortgage," &c.

We cannot see that the terms of the mortgage, which expressly named some of the articles of machinery, give any support to the view now presented, that the whole machinery, including that only referred to in general terms, passed as fixtures—part and parcel of the lot itself. The words are, "together with all the machinery, &c., consisting of one engine, one planer, one moulder, one tenoner, turning-lathe," &c., which would seem to indicate that the whole of the machinery was to pass as personal property, separate and distinct from the lot and not as a mere incident of it. When the mode and extent of the annexation of the chattels to the realty do not determine their character as fixtures, the intention with which they were placed upon the land should be considered; which intention may be gathered, not merely or chiefly from the manner in which the chattels were annexed, but from the character of the improvement, whether it is essential to the proper and ordinary use of the realty. The master stated that Tanner, when he put the machinery in position, intended it to be a permanent improvement, so far as he had any intention at all in regard to the matter, &c.; but Tanner himself testified that "we intended it to remain so long as we could make it profitable," &c. This does not seem to us to be very satisfactory proof of "a solemn dedication" of the machinery

as a part of the lot, so that it could not be detached at any time;
but, on the contrary, to indicate a contingency in which it would
be removed, which contingency actually happened.

Besides, it seems to us that the subsequent conduct of all the
parties was inconsistent with the alleged intention of dedication.
After the fire at the Cowpens, the machinery was detached from
the mortgaged premises without objection made known on the
part of the mortgagee, removed to Spartanburg, there placed in
position on leased premises and used for a year, and as separate
personal property mortgaged over and over again to other parties.
"When fixtures have been detached from the freehold, whether by
an act of God or of man, they are personal property." 8 Amer.
& Eng. Encycl. L., 43, note.

It appears that the machinery was not placed upon the lot
with a view to making an agricultural improvement, but with the
express intention of using it in carrying on a trade, viz., the
manufacturing of "doors, sash, and blinds." See *Evans* v. *Mc-
Lucas, supra; Rogers* v. *Brokaw*, 25. N. J. Eq., 496; *Railroad*
v. *Deal*, 90 N. C., 111; *Van Ness* v. *Pacard*, 2 Peters, 137;
*Trappes* v. *Harter*, 2 Cromp. & M., 153. In commenting on
this last case, it is stated in 1 Williams on Executors (7th edit.),
735, as follows: "The question was whether the machinery,
which was the subject of the action, passed to the mortgagee
under the mortgage deed, or vested in the assignees under a com-
mission of bankruptcy. The bankrupts had carried on the busi-
ness of calico printers. Many years ago the lands and buildings
in question were purchased and the conveyance taken to one of
the partners; but it is clear that the estate was treated through-
out as belonging to the partnership. The machinery was erected
by the partners for the purpose of carrying on the partnership
trade. It consisted principally of articles which could be re-
moved without the slightest injury to the freehold. They were
fixed by bolts and screws, so that they could be drawn off with-
out any damage to the building. All the rest of the machinery
was so fixed that it was capable of being removed without any
material injury either to itself or to the freehold * * *. Lord
Lyndhurst, in delivering the judgment of the court, observed
that it was clear, as between landlord and tenant, it might be

removed, if he put it there; as between heir and executor, it would have passed to the executor. His lordship proceeded to observe that this machinery, erected for the purposes of trade, in a neighborhood where machinery of such description was commonly removed, and which was capable of removal without injury to the freehold, was not to be considered as belonging to the inheritance, but a part of the personal estate," &c.

Assuming, as found by the master, that Lemaster had no interest in the property covered by the plaintiff's mortgage at the time it was given; that the money borrowed from plaintiff went into the business of the factory, and that Lemaster knew of and consented to the mortgage to the plaintiff, yet we cannot affirm, as matter of law, that the placing and using the articles of machinery on the Cowpens lot of Tanner made them, under the circumstances, permanent and immovable fixtures; so that, even after their severance and removal to Spartanburg, where they were again used, they could be followed and made liable as fragments of that lot, under the real estate mortgage of the plaintiff.

This makes it unnecessary to consider the defendants' other grounds of appeal.

The judgment of this court is, that the judgment of the Circuit Court be reversed, in so far as the defendant Cleveland and others were required to account to the plaintiff for the value of the machinery sold upon which he had a chattel mortgage, in the sum of two hundred and seventy-four dollars and fifty cents ($274.50); and that in all other respects it be affirmed.

MR. CHIEF JUSTICE SIMPSON. I concur in the result in this case on the ground that, even admitting that the machinery in question was a fixture to the freehold, and therefore covered by the real estate mortgage, the plaintiff could not recover against the defendants, Cleveland and others, in this action.

MR. JUSTICE McIVER. I concur in the result.