In re GOLDVILLE MFG. CO. OF GOLDVILLE, S. C.

Ex parte SOUTH CAROLINA LOAN & TRUST CO. et al.

(District Court, D. South Carolina. November 22, 1902.)

1. MORTGAGES—VALIDITY—DELIVERY.

A mortgage by a corporation to secure bonds, after being duly signed and proved in the presence of two witnesses, was taken by the attorney of the company and delivered to the trustee therein, by whom it was returned to the attorney to be recorded, and was so recorded, but was subsequently mislaid, and was not returned to the trustee. *Held*, that there was a sufficient delivery, under the law of South Carolina, to render the mortgage valid.

2. SAME—EXECUTION BY CORPORATION—ERROR IN NAME.

The fact that, in signing bonds and a mortgage on behalf of a corporation, a part of the corporate name was omitted, does not render them invalid, where the proof is clear that they were in fact intended to be the obligations of such corporation, and duly authorized.

3. CORPORATIONS—POWER TO PLEDGE BONDS.

A corporation having power to issue bonds may, in the absence of express restriction, pledge the same for money borrowed for legitimate purposes.

---

¶ 2. See Corporations, vol. 12, Cent. Dig. § 1798.

**4. SAME—VALIDITY OF BONDS.**

Bonds issued by a corporation for the purpose of raising money to pay for machinery contracted for by its predecessor in the ownership of a cotton mill, which the corporation agreed to receive and pay for, and which were pledged for such purpose, are not invalid under the provision of the South Carolina constitution prohibiting the issuing of bonds by corporations except for money or property actually received.

**5. FIXTURES—AS BETWEEN MORTGAGOR AND MORTGAGEE—COTTON-MILL MACHINERY.**

Under the statute of South Carolina requiring separate records to be kept of chattel mortgages and mortgages of real property, a mortgage covering a cotton mill and the machinery therein is valid as to such machinery, although recorded only in the record for real estate mortgages. The machinery being necessary to the use of the building for the purpose to which it was devoted, both together constitute the mill; and it must be presumed to have been the intention and understanding of both parties that the machinery should be a fixture, and a part of the realty, regardless of the manner of attachment.

Petition for Foreclosure of a Mortgage against a Bankrupt Corporation.

Miller & Whaley, for petitioners.

N. B. Dial, for creditors.

Geo. Johnstone, for bankrupt.

BRAWLEY, District Judge. This is a petition of the South Carolina Loan & Trust Company, trustee, and of the parties above named, bondholders, praying the foreclosure of a mortgage given by the Goldville Manufacturing Company of Goldville, S. C., to secure certain bonds. The mortgage conveys two tracts of land, one containing 1,365 acres, the other containing 119 acres, together with all the buildings and improvements situate on said premises, consisting in part of one cotton mill building, 280x75 feet, boiler room, 33x35 feet, and engine room, 38x35 feet, attached; one 20-ton oil mill building; one ginnery building; 20 operatives' houses, and other buildings; also all machinery, shafting, engines, boilers, tools, and appliances belonging to said mortgagor, and used in its cotton mill business, its cotton oil business, and its ginnery business, consisting in part of A. T. Atheton & Co.'s pickers and intermediates, with a particular description of certain other machinery in the mill, in the cotton oil mill outfit, and in the ginnery outfit. This company was incorporated under the general laws of the state of South Carolina in October, 1900. Previous to that time J. S. Blalock and his son L. W. C. Blalock and his daughter M. E. Browning, who were the owners of the land described, and other large tracts of land adjacent, had been conducting large farming operations thereon, and a small mercantile business for the supply of their tenants and laborers, and had erected the cotton gins and the cotton oil machinery, and were erecting the cotton spinning mill. The mercantile business had been conducted under the name of the Goldville Manufacturing Company, also; but, requiring additional capital to complete the mill, they were advised to form a corporation, and such corporation was organized, with a capital of $100,000, divided into 1,000 shares, of $100 each; L. W. C. Blalock subscribing to 549 shares, M. E.

Browning to 449 shares, and J. S. Blalock to two shares; and the parties named were elected directors of the company; the capital stock being paid in lands, buildings, etc., estimated as of the value of $100,000. On December 3, 1900, in pursuance of a notice published in the Clinton Gazette, a newspaper published in the county of Laurens, a special meeting of the stockholders was held, and the board of directors of the corporation was authorized and directed to issue 75 bonds of the corporation, of the denomination of $1,000 each, bearing interest at the rate of 6 per cent. per annum, and to execute a deed of mortgage of all the property, rights, and franchises of the corporation to the South Carolina Loan & Trust Company of Charleston, S. C., as trustee, to secure the payment of said bonds. On the same day the directors met, and the draft of the deed of mortgage was approved, and the president and the treasurer were authorized to sell the bonds, and until sold they were authorized to pledge the same as collateral for notes and other evidences of indebtedness of the company. It appears from the testimony that the Blalocks had negotiated for machinery to be put into the cotton mill to the value of about $75,000, and, after vainly endeavoring to sell the bonds at par, they borrowed money from the People's National Bank and others of the petitioners upon a pledge of the bonds as collateral; the money thus obtained being used to pay for the machinery. Bonds to the amount of $5,000 were pledged to the Carolina, Newberry & Laurens Railroad Company to secure an indebtedness of about $4,000 for freight due on the machinery transported. All of the bonds, except $1,000, were thus disposed of. The Goldville Manufacturing Company has been adjudicated a bankrupt, and, upon this petition for foreclosure, certain of the unsecured creditors have appeared in opposition thereto, and various objections to the bonds are made.

The first to be considered is that the meeting at which the bonds were authorized was not advertised according to law. The statute requires that:

"The board of directors, trustees or managers shall call a stockholders' meeting, giving at least thirty days' notice of the time, the place and purpose of said meeting, either by the mailing of written notice to each stockholder, or else by publication in some newspaper published in the county where the corporation has its principal place of business; or if no paper be published in the county, by written or printed notice pasted up on the court house door." 22 St. at Large, S. C. p. 770.

The testimony is that the notice was duly published in the Clinton Gazette, a newspaper published in Laurens county, 30 days prior to the meeting, and printed copies of the advertisement were cut from the newspaper and pasted on the minutes of the company. L. W. C. Blalock testified that he cut the clipping each week after receiving the paper. To offset this positive testimony, there is the vague and uncertain testimony of the publisher of the newspaper that his recollection is that it was not published more than two or three successive weeks; but no files of his paper were preserved, and his testimony as to his mere recollection cannot outweigh Blalock's testimony, supported as it is by the production of the printed

notices. Inasmuch as the notice required by law was intended for the benefit of stockholders, to prevent action to their prejudice being taken at meetings of which they had no notice, they could waive it if they had actual notice of the meeting; and the minutes of the meeting show that all of the stockholders were present when the bonds and mortgage were authorized. It is clear that there is nothing in this objection, for the statutory notice was published, and all the stockholders were present at the meeting.

The second objection is that there is no proof that the mortgage was delivered in the presence of two witnesses. It is admitted that the mortgage was signed and sealed and proved in the presence of two witnesses, and that it has been recorded in the Real Estate Mortgage Book of Laurens County; but the trustee was not present when the mortgage was executed, and the objection is made that it was not delivered. After the execution of the mortgage the same was turned over to Mr. Lyles' clerk, who was one of the witnesses, and sent by him to Mr. Lyles, who, as the attorney for the company, carried the same to Charleston and delivered it to the trustee. The trustee gave it to Mr. Lyles to be recorded, and it was sent to the registrar in Laurens county, and returned to him, but the original mortgage has been mislaid. By a stipulation of counsel the copy of the mortgage in evidence is admitted as a true copy of the original and of its record. Delivery is indispensable to the completion of a deed, but this may be done either formally, or delivery may be inferred from circumstances which indicate that the grantor intended to part with the dominion of the instrument and put it into the possession of the trustee. In Withers v. Jenkins, 6 S. C. 122, the court says:

"It is not necessary to the valid execution of a deed that there should be actual delivery either to the grantee in person, or to some one expressly authorized to accept it on his behalf. Much less is such a requisition essential where the instrument gives a trust conferring on the trustee a mere naked title, coupled with no interest, that he holds for the mere purpose of protecting and preserving the trust for the beneficiaries who may be entitled to these enjoyments. If the grantor, in the absence of the grantee, and without his knowledge, has actually consummated the delivery in accordance with the purpose declared on the face of the instrument, the object to be effected by it is as fully accomplished as if there had been an actual transfer of the paper from the hands of the grantor to those of the grantee."

I have no hesitation, therefore, in holding that the mortgage was duly executed and delivered.

The third objection is that the bonds and mortgage are in the name of the Goldville Manufacturing Company, whereas the corporate name of the company is the Goldville Manufacturing Company of Goldville, S. C. The mortgage recites that it is the mortgage of the Goldville Manufacturing Company, a corporation duly organized under the laws of the state of South Carolina on the 23d day of October, 1900, having its principal place of business at Goldville, Laurens county, S. C. There is no other corporation at Goldville, and the Blalocks were never officers of any other company; and the proof is clear that the notes, bonds and mortgage, while signed, "Goldville Manufacturing Company," were in fact the notes, bonds,

and mortgage of the Goldville Manufacturing Company of Goldville, S. C. It is a mere misnomer, of which neither the company itself nor its creditors can take advantage. "The identity of a corporation is no more affected by a change of name than the identity of an individual. The agents of a corporation have no implied authority to use any name except that indicated by the company's charter in contracting on the company's behalf, but the use of a wrong name is ordinarily not material if the corporation is really intended by the parties. The misnomer of a corporation has the same legal effect as the misnomer of an individual. A contract entered into by a corporation under an assumed name may be enforced by either of the parties. If the contract is expressed in writing and the identity of the corporation can be ascertained from the instrument itself, the misnomer is wholly unimportant; but, if necessary, other evidence may be introduced in order to establish what company was intended." Mor. Priv. Corp. § 354. Any variation from the precise name of a corporation, when the true name may be collected from the instrument itself, and when it appears from the proofs that the obligations sued upon were intended to be the obligation of the corporation sued, is unimportant.

The fourth objection is that the corporation had no right to pledge the bonds. It appears from the minute books of the corporation that, at a meeting of the three directors who were the three stockholders of the company, the officers of the company were expressly authorized to pledge the bonds; and, as a general rule, "a corporation having authority to issue bonds may, in the absence of express restriction, pledge them for money borrowed for legitimate purposes." Nelson v. Hubbard (Ala.) 11 South. 428, 17 L. R. A. 375; 42 Am. & Eng. Corp. Cas. 210.

The fifth objection is that these bonds are invalid under section 10, art. 9, of the constitution of South Carolina, which provides that "stock or bonds shall not be issued by any corporation save for labor done, or money or property actually received or subscribed; and all fictitious increase of stock and indebtedness shall be void." This constitutional prohibition was evidently intended to provide against any issue of stock or bonds without consideration, to protect stockholders against spoliation, and to guard the public against worthless securities, and can have no application here, where the bonds were issued for the purpose of paying for machinery already contracted for, and which actually went into the building. The machinery had been contracted for by the Blalocks, but formed no part of the payment of their subscription to the capital stock of the company, and upon the organization of the company there was an agreement that the company should take the machinery and assume the payment of the debts. It is not a case of pledging bonds for an antecedent debt of the company, for the company did not owe for the machinery until it assumed the Blalock contracts, borrowed the money for the payment thereof, and pledged the bonds as collateral. It was a present consideration, and the company would not have secured the machinery except upon the assumption of the obligation to pay for the same.

The sixth objection is that the mortgage does not cover the personal property, because it was ·recorded only in the Real Estate Mortgage Book of the County of Laurens. The statutes of South Carolina provide "that the registrars of mesne conveyance of the several counties shall provide different sets of books for the recording of chattel mortgages and mortgages on real estate, in one of which sets all chattel mortgages shall be recorded, and in the other set all mortgages on real estate shall be recorded." There is no provision in the statutes which specifically provides in what book a mortgage covering both real estate and personal property shall be recorded, and there is no decision in South Carolina on the precise point. I am of opinion that in a case of this kind, where the mortgage is of the mill building and its machinery, all purposes for which recording is necessary are served by its being recorded in the Real Estate Book, and that there was no necessity for a double record. The case of Anthony v. Butler, 13 Pet. 434, 10 L. Ed. 229, seems to sustain this view; and there is a Missouri case (Jennings v. Sparkman, 39 Mo. App. 669) to the same effect. All of the machinery described in the mortgage was designed to become a part of the mill building,—was adapted to and designed to promote the object for which the mill was erected; such real estate and such machinery constituted the mill, and were, ex vi termini, a unit; and I am of opinion that it was the intention of the parties, and the understanding. of mortgagor and mortgagee, that the same should become a fixture and a part of the freehold, and constitute the cotton mill which was mortgaged. One of the earliest cases in South Carolina wherein the principle is discussed is Faris v. Walker, 1 Bailey, 541, where Justice O'Neill says:

"What is such a fixture as passes with the freehold? has been a question of great difficulty. The rule on the subject, as between the heir and the executor, or between vendor and vendee, is more rigorous than between landlord and tenant, or the executor of a tenant for life and the remainderman. In relation to the former, all things which are necessary to the full and free enjoyment of the freehold, and which are in any way attached to it, are held to be fixtures, and pass with it. With regard to the other class, articles used for a trade or manufacture, or for the temporary convenience of the occupant, and which may be detached from the freehold without injuring it, are held not to be fixtures. What ought to be a fixture depends, I think, materially upon the nature of the freehold sold. If a plantation, then all such things attached to the land, which are usually necessary or are used in the management of the farm, would pass. If a freehold, fitted up for trading of a particular kind or for manufactures, is sold to a person intending to follow the same business, then all the machinery necessary to the manufacture or trade so intended to be carried on would pass. I therefore instructed the jury that, if they thought the cotton gin necessary to the full and free enjoyment of the freehold sold for agricultural purposes, it passed to the defendant under the sale by plaintiff. Vide Nimmons v. Moye, decided at Columbia in December, 1829, and 2 Kent, Comm. 378–80."

One of the latest cases on the subject is Padgett v. Cleveland, 33 S. C. 347, 11 S. E. 1069, where a portable engine which had been placed on the mortgaged property was thereafter removed to another town. The court says:

"When the mode and extent of the annexation of the chattels to the realty do not determine their character as fixtures, the intention with which they

118 F.—57

were placed upon the land should be considered, which intention may be gathered not merely or chiefly from the manner in which the chattels were annexed, but from the character of the improvement,—whether it is essential to the proper and ordinary use of the realty."

In that case the man who put the engine on the property testified that he intended it to remain so long as he could make it profitable; and the court held that there was no satisfactory proof of the solemn dedication of the machinery as a part of the lot, so that it could not be detached at any time. The conduct of the parties was inconsistent with the alleged intention of dedication, and the machinery, having been detached from the mortgaged premises without objection, and removed to another place, was held to be personal property.

In Hopewell Mills v. Taunton Sav. Bank, 150 Mass. 519, 23 N. E. 327, 6 L. R. A. 249, 15 Am. St. Rep. 235, the issue was whether certain machinery in a cotton mill was, as between mortgagor and mortgagee, a part of the realty; the fact being that the machinery was procured for the use of manufacturing cotton cloth, and had been attached to the building and connected with a motive power with a view to permanence. The court held that the machines were fixtures, and says:

"Except in cases where a contract determines the character, a machine placed in a building is found to be real estate or personal property from the external indications which show whether or not it belongs to the building as an article designed to become a part of it, and to be used with it to promote the object for which it was erected or to which it has been adapted and devoted,—an article intended not to be taken out and used elsewhere unless by reason of some unexpected change in the use of the building itself."

The tendency of the modern cases is to make this a question of what was the intention with which the machinery was put in place; and, after quoting numerous cases in that state and in others, says:

"These cases seem to recognize the true principle on which the decision should rest, only it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles not merely his own rights, but the rights of others who have or who may acquire interests in the property. In this commonwealth it has been said that whatever is placed in a building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes a part of the realty."

And to the same effect are the decisions in the great manufacturing states of Pennsylvania, New Jersey, and New York. And the conclusion of them all is that if there is an intent to incorporate the chattels with the real estate for the uses to which the real estate is appropriated, and the chattels are annexed to the freehold, and are fitted for and applied to the use to which the real estate is appropriated, all being designed for and necessary to the prosecution of a common purpose, then machinery and land become unified, and are subject to the lien of the real estate mortgage. Hill v. Bank, 97 U. S. 453, 24 L. Ed. 1051, is in harmony with these views.

I have considered the cases cited by the creditors in opposition to these views (Evans v. McLucas, 15 S. C. 67; Padgett v. Cleveland, 33 S. C. 339, 11 S. E. 1069; and Hughes v. Shingle Co., 51 S. C. 1, 28 S. E. 2), and they do not alter the conclusion reached, which is that the intention of the parties is the governing principle in South Carolina, as elsewhere, in determining what constitutes a fixture.

Upon the whole case, I am of opinion that the bonds are valid obligations of the bankrupt corporation; that they were lawfully pledged for money borrowed to pay for the machinery and the expenses of transportation thereof, and that the said machinery is covered by the mortgage, which was duly executed, delivered, and recorded; and that the petitioners are entitled to a decree for foreclosure.