## OTIS ELEVATOR CO. v. PALMETTO CONST. CO.

(Circuit Court of Appeals, Fourth Circuit. October 5, 1916.)

### No. 1428.

1. **FIXTURES ⊕⇒9—TROVER AND CONVERSION ⊕⇒10—ACTS CONSTITUTING.**

Plaintiff prepared a written offer to furnish and install elevators in a building to be erected by defendant, which was discussed as to the price between representatives of the parties. The proposed contract contained a clause reserving title to the elevators in plaintiff until paid for. The contract was never executed, but later a similar contract was made between plaintiff and the general contractor for the construction of the building. Defendant paid the contractor, and afterward sold the building. The contractor did not pay plaintiff in full for the elevators. *Held*, that defendant was not chargeable as matter of law with the reservation of title, and could not be held liable for conversion, except on a finding that it had actual knowledge of such reservation.

[Ed. Note.—For other cases, see Fixtures, Dec. Dig. ⊕⇒9; Trover and Conversion, Cent. Dig. §§ 84–94; Dec. Dig. ⊕⇒10.]

2. **FIXTURES ⊕⇒31—BETWEEN OWNER OF REALTY AND CLAIMANT OF CHATTELS —NECESSITY OF OWNER'S CONSENT.**

When personal property is so affixed to the soil or the building on it that it cannot be removed without serious injury to the property to which it is attached, it becomes a part of the realty, and consent of the owner of the realty, express or implied, is necessary to any agreement for its removal.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 62; Dec. Dig. ⊕⇒31.]

3. **FIXTURES ⊕⇒27(3)—BETWEEN OWNER OF LAND AND CLAIMANT OF CHATTELS—RIGHT OF REMOVAL.**

While an owner of land, with actual knowledge that a contractor is using the personal property of another without his consent in a building thereon, is required by good faith to notify the owner of the personal property, on the other hand, knowledge by the seller of a chattel that the contractor intends to affix it to the property of another, so that it will become a part of the realty, imposes upon him the obligation to see that he has the consent of the owner of the property to any conditions attached to the sale.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 5; Dec. Dig. ⊕⇒27(3).]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action at law by the Otis Elevator Company against the Palmetto Construction Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. B. S. Lyles, of Columbia, S. C. (Lyles & Lyles, of Columbia, S. C., on the brief), for plaintiff in error.

W. T. Aycock, of Columbia, S. C. (Weston & Aycock, of Columbia, S. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON, District Judge.

WOODS, Circuit Judge. The defendant, Palmetto Construction Company, made an agreement with John Cain, a contractor, for the erection of an office building on its lot in the city of Columbia, S. C. Afterward on July 1, 1912, the plaintiff, Otis Elevator Company, contracted in writing with Cain to sell and install the elevators in the building for $30,822.50. By this contract the Elevator Company stipulated that it should "retain title to and possession of all machinery, implements, and apparatus furnished by us under terms of this proposal until final payment shall have been made." Cain made payments as the work progressed, but at its completion he turned out to be insolvent, owing the Elevator Company a large balance, of which $5,171.46 is still unpaid. In this action the Elevator Company asserts the liability of the Palmetto Construction Company for this unpaid balance, notwithstanding full payment by it to Cain of the contract price of the building and its subsequent sale of the property, including the elevators. The basis of this claim is the averment that the Construction Company's sale to an innocent third party was a conversion. The verdict of the jury was in favor of the defendant, and the case comes up on exceptions to the charge of the presiding judge.

Attention was paid in the argument to some nice distinctions as to the nature and form of the action. These are of no consequence, since it was in effect conceded in the trial court and here that, if the Elevator Company would have had a right to subject the elevators to the payment of the balance of $5,171.46 before the Construction Company sold the property, then that company is liable in this action. Therefore only the merits of the controversy are involved.

[1] The first position taken by the Elevator Company on the merits is that by the undisputed evidence the Construction Company was chargeable with notice of the reservation of title, and that, therefore, the District Court erred in refusing to direct a verdict for the plaintiff. The material evidence in short is this:

On February 12, 1912, Seibels and Matthews, together with Harter, the architect of the Construction Company, in behalf of that company, entered into negotiations in New York with the Elevator Company, which resulted in an agreement for the sale and installment of the elevators at the price of $30,500. This agreement was in the form of a written proposal by the Elevator Company, to be accepted in writing by the Construction Company, setting out the specifications and the

price and stipulating for the reservation of the title to the elevators until payment of the price in full. The paper was before all the representatives of the Construction Company, but no feature of it was under discussion, except the price. The reduction of price from that first asked was noted on the margin by Matthews, initialed by Harter, the architect, and dated by Cartwright, the representative of the Elevator Company. Instead of signing the contract, however, the representatives of the Construction Company made known their desire that the contract should be signed by John J. Cain, the contractor for the entire office building, including the elevators. After delay, due to misunderstanding as to the price of the elevators and the height of the building, and to some dissatisfaction on the part of Cain, the contract was at last executed by Cain alone on July 1, 1912. This contract, except as to the price of the elevators and the height of the building, was the same that had been agreed on, but not signed, in February before by the representatives of the Construction Company and the Elevator Company, and contained the same reservation of title until payment of the contract price. The correspondence shows that the Construction Company interested itself in having Cain execute the contract. There was also evidence to the effect that Cain consulted Seibels, who represented the Construction Company, as to the propriety of signing; that Seibels looked over the contract just before it was executed, and that he advised Cain to sign; but, since this was denied by Seibels, it cannot be considered on a motion to direct the verdict. All the representatives of the Construction Company denied having any knowledge of the clause in the contract reserving the title to the elevators, and there is no evidence that it was called to the attention of any of them.

The Construction Company not having become a party to the contract, the knowledge of its representatives that the Elevator Company had agreed with Cain to furnish and install the elevators did not charge them with notice, nor put them on inquiry as to reservation of title, just as knowledge by a purchaser of a previous conveyance of land does not put him on inquiry for a purchase-money mortgage. Whether the discussion of the contract and such examination of it as the representatives of the Construction Company made gave them actual knowledge of the reservation, or such opportunity to know of it as would have put a reasonably discreet man on notice, was a question of fact for the jury, and not for the court. Up to the moment of execution there is no legal presumption that the parties thereto have examined and know the stipulations of a written instrument. And the court could not say in this case that there was conclusive proof of such knowledge by the negotiators for the Construction Company as a matter of fact. Discussion and consideration of the price did not prove conclusively that the stipulation for reservation of title was read by the representatives of the Construction Company; nor were they ever under any legal duty to read it. There was no ground, therefore, for a direction of a verdict, and the instruction was properly given that the plaintiff could not recover, unless the jury should conclude from the circumstances that the rep-

resentatives of the Construction Company actually knew, or that any average reasonable man must have known, that the contract provided for a reservation of title.

[2] The District Judge further charged the jury that for the plaintiff to recover it was necessary to show, not only notice to the Construction Company of the reservation of title until full payment by Cain, but assent of the Construction Company to the reservation. The decisions and reasonings of the courts of this country and of England on some phases of the law of fixtures are irreconcilable. But the authorities seem to agree on this rule, that when personal property is so affixed to the soil, or the building on it, that it cannot be removed without serious injury to the property to which it is attached, it becomes a part of the realty, and consent of the owner of the realty is necessary to any agreement for its removal.

In Detroit Steel Cooperage Co. v. Sistersville Brewing Co., 233 U. S. 712, 34 Sup. Ct. 753, 58 L. Ed. 1166, the whole property of the Brewing Company was subject to a mortgage. After the execution of the mortgage the Detroit Steel Cooperage Company sold tanks to the Brewing Company upon the written condition that they should remain the property of the seller until paid for. The tanks were essential to the working of the brewery, and after they were installed the opening of the recess in which they stood was bricked up. The damage that would have resulted to the property from removal was trifling, and the seller who held the contract of conditional sale offered to make it good. The contract of conditional sale was duly recorded, but there was no evidence of assent of the mortgagees to the conditional sale, or of actual notice to them. The court held that neither the attachment of the tanks to the soil, nor the fact that they were necessary to the brewery, nor the slight damage, which the seller agreed to make good, affected the validity of the conditional sale or the right of the seller to remove the tanks on default in payment of the purchase money. But the court was careful to distinguish the case from others like Porter v. Pittsburg B. S. Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210, in which "the property claimed has become so intimately connected with or embodied in that which is the subject of the mortgage that to reclaim would more or less disintegrate the property held by the mortgage." The distinction is also recognized in Padgett v. Cleveland, 33 S. C. 339, 11 S. E. 1069.

The leading English case of Reynolds v. Ashby & Son (decided by the House of Lords, 1904) 73 L. J. K. B. (N. S.) 946, 1 B. R. C. 653, goes much further in favor of the rights of the owner or mortgagee in fixtures placed onto the land when subject to a contract of conditional sale. There the court said:

"By unscrewing the nuts each machine, however heavy, could no doubt be raised and removed without injury to the building containing them and without injury to its concrete bed and bolts imbedded in it."

Yet the court held that the machines had ceased to be chattels and had become fixtures, which the seller holding the contract of conditional sale was not entitled to remove from the possession of the mort-

gagees. Stress was laid upon the fact that the seller of the machines knew that the purchaser intended to put them in his factory and use them, and that the factory was mortgaged, and so ran the risk of the machines being claimed as fixtures.

The apparent exception, of which Evans v. McLucas, 15 S. C. 67, is an example, that trade appliances and fixtures of a tenant for domestic purposes may be removed, although under the general rule above stated they would not be removable, has no application. Numerous cases illustrating the agreements and differences of the courts as to when personal property attached to the realty may be removed, and when it may not, will be found collated in note to Monti v. Barnes, 1 Brit. Rul. Cas. 966; Fuller-Warren Co. v. Harter, 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. Rep. 877; 11 Ruling Case Law, 1061; 19 Cyc. 1048–1055; Allis-Chalmers Co. v. City of Atlantic, 164 Iowa, 8, 144 N. W. 346, 52 L. R. A. (N. S.) 561, Ann. Cas. 1916D, 910. But we think no case will be found at variance with the general rule above stated.

[3] Mere notice to the owner of land that another person intends to attach to it personal property subject to a mortgage or condition that it shall be taken and removed for nonpayment of the purchase money cannot take the place of consent and bind the owner of the land. He owes no duty to take the initiative and expressly prohibit the placing of fixtures on his property in such way that they cannot be removed without injury to him. It is true that consent of the owner of land may often be implied from the manner in which notice is received or treated, and the action or silence of the owner may estop him from denying consent; but there must be consent, either express or implied. The reason for holding consent of the owner to the condition that it may be removed necessary to the removal of property so attached applies with special force to property attached by an independent contractor. The owner of the property has no duty or right to question the terms upon which the contractor buys his materials or deals with his subcontractors; nor is he under any obligation, except such as may be imposed by statute law, to see that the contractor discharges his obligations to others. His contract is already made. He is not a purchaser, in the ordinary sense, of anything that goes into the building, and has no control of the contractor's dealings except to require the building completed in the manner stipulated. He is bound to allow the contractor to complete his contract and to pay him according to his own obligation. No doubt an owner of land, with actual knowledge that a contractor is using the personal property of another, or property subject to a lien in favor of another, in his building, without the consent of the owner of such personal property, or the holder of the lien, is required by good faith to notify the owner of the personal property or holder of the lien. With such knowledge that the personal property of another is about to be used for his benefit without the knowledge of its owner, the law imputes to the owner of the land a contract to pay for the property, or consent to be bound by the conditions upon which the contractor obtained it, unless he notifies the owner of the personal property so that he may reclaim it.

On the other hand, knowledge by the seller of the chattel that the contractor intends to affix it to the property of another, so that it will become a part of the realty, imposes upon the seller the obligation to see that he has the consent of the owner of the property to any conditions attached to the sale. Reynolds v. Ashby, supra; Allis-Chalmers Co. v. City of Atlantic, 164 Iowa, 8, 144 N. W. 346, 52 L. R. A. (N. S.) 561, Ann. Cas. 1916D, 910; Thompson v. Smith, 111 Iowa, 718, 83 N. W. 789, 50 L. R. A. 780, 82 Am. St. Rep. 541, and authorities cited.

The considerations in favor of the requirement that the plaintiff should show consent of the Construction Company to the installing of the elevators with the reservation of title by the Elevator Company may be thus summed up: The elevators are in their nature fixtures absolutely essential to the use of an office building and not removable without serious injury to it. It was the intention of all parties that the elevators should become permanent fixtures necessary to the use of the property. The Palmetto Company, the owner of the land, had no right to dictate the terms or conditions upon which Cain, the contractor, should procure the elevators or other materials, or the terms upon which he should deal with subcontractors. The Palmetto Company, as owner of the lot, occupied a higher position than that of an ordinary purchaser for valuable consideration, and mere notice to it gave it no power of control over the transactions of Cain with the Otis Elevator Company. The only duty it could have owed to the Elevator Company, upon receiving notice of Cain's conditional purchase, would have been to notify the Elevator Company that the property was about to be attached to its building, so that it could not be removed without injury, and this the Elevator Company already knew. We think all the circumstances of the case clearly support the view of the District Judge that consent, as well as notice, was necessary in order to bind the Palmetto Construction Company to the conditional contract of sale.

But it will not help the defendant to assume that notice to the Palmetto Company of the reservation in the contract of sale would have been sufficient. If assent of the Construction Company was not necessary, still we think there was no prejudice in the charge. The above statement of the evidence conclusively shows that there was no issue of assent, as distinguished from notice of the reservation of the title by the Elevator Company. It was proved beyond controversy that the defendant, by its representatives, encouraged and requested the Elevator Company to make the written contract with Cain. Hence, if the jury found that it had notice of the reservation of title, it was impossible that they should find that the defendant did not assent to the reservation. Looking at the matter in this practical way, there could have been no prejudicial error in charging the jury that, for the plaintiff to recover, they must find, not only that the defendant had notice of the reservation, but had assented to it, for the reason that notice under the circumstances necessarily implied assent. An incorrect charge that a particular finding is essential to recovery is not reversi-

ble error, when such finding is necessarily involved in another finding which is essential. 4 Corpus Juris, p. 1025.

We conclude there was no error in refusing to direct a verdict for the defendant, or in submitting to the jury the question of assent in connection with that of notice.

Affirmed.