CALIFORNIA PACKING CORPORATION
v. SUN–MAID RAISIN GROWERS
OF CALIFORNIA.

District Court, S. D. California, N. D.
Feb. 23, 1934.

Edward S. Rogers, of New York City, and Miller & Boyken, of San Francisco, Cal., for defendant.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for plaintiff.

McCORMICK, District Judge.

This is a suit in equity for an injunction to enforce trade-mark rights in certain food products. The litigants are competitors engaged in marketing the same lines of merchandise. Plaintiff is a New York corporation and defendant is a California co-operative association of raisin growers in the San Joaquin Valley of California. Diversity of citizenship thus appears and the amount in controversy exceeds the necessary jurisdictional sum.

The action unlike most suits to enjoin infringements of trade-marks is not founded upon fraud. The plaintiff cannot in the light of the evidence claim that defendant is seeking to take advantage of a competitor's reputation by imitating its trade-mark. That there is no actionable similarity between the two trade-marks in suit will readily appear from an ocular inspection of the trade-marks of the plaintiff and defendant respectively. The trade-mark of plaintiff company consists of the hyphenated word "Sun-Kist" in block letters of varying sizes sometimes employed with a drawing of the sun with its rays projecting or diffusing into the block lettered word, while the defendant's trade-mark is a composite arrangement comprising the pictorial representation of the sun and within its circle or circumference that projects the rays outwardly appears the picture of a girl, the hyphenated word "Sun-Maid" in uniform size letters appearing below the representation of the sun and the girl. The defendant has used another trade-mark which in addition to the symbol just described as the feature of the representation of a tray or basket filled with grapes held by the girl.

The only apparent likelihood of confusion or mistake in the mind of the public by reason of the two trade-marks resides in the use of the word "sun" by defendant upon goods of the same descriptive properties as those of the plaintiff. It is obvious that the labels of the parties bear no visual resemblance to each other and when consideration is given to the evidence denoting a widespread use of the word "sun" on food products that do not contain raisins, and the registration in the Patent Office of a great number of trade-marks by others than the parties herein who use that word on a wide range of food products, it is

very clear that a court of equity should hesitate to decree monopoly upon such employment of the word "sun" as is shown by the record of this case. No finding of infringement can be predicated in this suit because the word "sun" is used. The language of Judge Alschuler writing for the Seventh Circuit Court of Appeals in Pabst Brewing Co. v. Decatur Brewing Co., 284 F. 110, 112, relative to the name "Blue Ribbon" is forcefully applicable to the matter just mentioned. He said:

"It was shown to have been registered in the Patent Office over 60 times, some of the several registrations being for whisky, wine, vinegar, flavoring extract, candy, chewing gum, chocolate, flour, bread, cigars, chewing and smoking tobacco, citrus fruits, fresh grapes, fresh deciduous fruits and canned fruits. Such registrations at different times and to different persons would indicate that the Patent Office did not recognize a large measure of inclusiveness in the name."

See, also, Patton Paint Co. v. Sunset Paint Co., 53 App. D. C. 348, 290 F. 323, for a discussion as to right of one to exclusively appropriate the word "sun" in trade-mark registrations.

It follows then that if complainant is not entitled to an injunction to restrain the use by the defendant of its trade-mark "Sun-Maid" upon nonraisin food products because of absence of fraud, deception, or resemblance, it must rest its claim to equitable relief in this court solely upon the terms and obligations of a contract made in California on March 10, 1917, between California Associated Raisin Company, a corporation, party of the first part, and Griffin & Skelly Company, a corporation; the J. K. Armsby Company, a corporation; California Fruit Canner's Association and California Packing Corporation, plaintiff herein, as the other parties thereto.

By this agreement the right of California Associated Raisin Company to use its trademark "Sun-Maid" in connection with the packing and sale of raisins and food products containing raisins was recognized and conceded by the other parties to the agreement. It was, however, further stated in that contract that said California Associated Raisin Company should "use the said trademark 'Sun-Maid' only on packages containing raisins or on packages containing food products or confections made wholly or in part from raisins, and that said trade-mark when so used by the party of the first part shall always be accompanied by the name of the party of the first part, or the name 'Associated Warehouse Company' as packer; provided, however, that nothing herein contained shall be construed to limit the right of the party of the first part to sell or assign said trade-mark, or to license other persons, firms or corporations to use the same to the extent to which the party of the first part has the right to use the same under this agreement as against said The J. K. Armsby Company or said California Packing Corporation; and provided further that nothing herein contained shall be construed to require said The J. K. Armsby Company or California Packing Corporation to relinquish its use of the trade-mark 'Sunkist' in connection with the packing and sale of raisins or other food products."

At the time of this agreement the J. K. Armsby Company and its successor, the plaintiff herein, was using the trade-mark "Sunkist" in connection with the packing and sale of raisins and certain other food products and the contract expressly recognized and sanctioned a continuance of the right to so use the trade-mark "Sunkist."

It is contended by plaintiff that defendant herein is bound by the agreement of March 10, 1917, to limit its use of the trade-mark "Sun-Maid" precisely as the restrictive covenant of California Associated Raisin Company in said agreement circumscribed its use of such trade-mark. This claim is predicated upon the assumption that defendant obtained its title to the trade-mark "Sun-Maid" from or through California Associated Raisin Company and that such company could sell or assign no greater right to use the trade-mark than it possessed under the aforesaid agreement. It is strenuously urged by defendant that this contention is unsound because it was neither in existence on March 10, 1917, nor a party to the agreement of that date and had no knowledge whatever of its terms until a few weeks before this suit was commenced.

I am satisfied from the evidence and find that the defendant acquired in good faith and for a valuable consideration from the Sun-Maid Raisin Growers, which was the successor of California Associated Raisin Company, the "Sun-Maid" trade-mark. I also find that the defendant in this suit had no knowledge of the existence or terms of the contract of March 10, 1917, or of any claim by plaintiff for infringement of its trade-mark until some time in 1929. Nevertheless, I feel obliged under the decision of the 9th Circuit Court of Appeals in Tillman & Bendel v. Calif. Packing Corp., 63 F.(2d) 498, 503, to

adopt the ruling of the Court of Customs and Patent Appeals in Calif. Packing Corp. v. Sun-Maid Raisin Growers of Calif., 64 F. (2d) 370, to the extent that defendant must be held to have assumed the obligations of California Associated Raisin Company under the contract of March 10, 1917. See, also, Waukesha Hygeia Mineral Springs v. Hygeia, etc., Water Co. (C. C. A.) 63 F. 438.

Notwithstanding the binding effect of the March 10, 1917, contract upon the defendant, the present situation of the litigants in this court of equity is substantially different than it was in the Court of Customs and Patent Appeals. See Postum Cereal Co. v. Calif. Fig Nut Co., 272 U. S. 693, 47 S. Ct. 284, 71 L. Ed. 478. The decision of that court merely determined, administratively, that the defendant here which was applicant there, could not register its trade-mark in the Patent Office in the face of the opposition of California Packing Corporation. Here the last-named company is seeking the aid of equity to restrain and prohibit any use of the trade-mark or name "Sun-Maid" by the Sun-Maid Raisin Growers of California upon any nonraisin food products. The plaintiff is an affirmative suitor and has thus assumed the burden of sustaining its right to an injunction under all the facts and circumstances shown by the record that was made in this court, and as was said by Judge Wilbur in the Elmer Co. Ltd., v. Kemp, as Receiver (C. C. A.) 67 F.(2d) 948, 952:

"Moreover, in a federal court of equity, we must decide cases in accordance with our view of the general principles of equity jurisprudence."

It is an established equitable principle that where one with actual or constructive knowledge of the facts induces another by his conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice and this is so regardless of the particular intent of the party whose acquiescence induces action. See 21 C. J., p. 1916, and cases cited.

It should also be noted that the record made in this court is also quite different from that disclosed by the transcript of the proceedings in the Court of Customs and Patent Appeals. Evidence through the corporate minutes of the California Associated Raisin Company, relating to "Sun-Maid" trade-mark and the contract of March 10, 1917, as well as testimony that was not introduced in the Court of Patent Appeals, presents an issue under the special defense of equitable estoppel that even if germane to the administrative inquiry by the Patent Appeals court was not considered by it and formed no basis of the reasons that led that tribunal to the conclusion that registration of defendant's trade-mark in the Patent Office should be denied.

It has hereinbefore been stated that the March 10, 1917, contract was unknown to defendant until 1929. The official who has had custody of the records and contracts of the defendant association since 1924 testified that no copy of the contract was in his possession or in the corporation files at any time during his connection with the defendant. The plaintiff, on the other hand, has had the contract in its possession since its execution in 1917, and has been at all times familiar with its terms. The California Associated Raisin Company without opposition registered the trade-mark "Sun-Maid" on April 30, 1918, for dried fruits and again on May 14, 1918, for raisins and dried fruits. There was also issued January 6, 1925, in the name of the defendant in this suit without any opposition by plaintiff corporation another certificate of registration of the "Sun-Maid" trade-mark upon a variety of food products that do not contain raisins in any form.

The complainant had at least constructive notice of these trade-mark claims and registrations by defendant and it was also proven that the plaintiff corporation had maintained, as early as 1927, a trade-mark department in its organization that consisted of specialists in trade-mark matters. It is a fair inference that this staff was cognizant of all trade activities and trade-marks that might affect the business of complainant company, and that it knew of the claims that defendant was asserting to the "Sun-Maid" trade-mark on nonraisin food products. Moreover, the defendant in September, 1926, published in a trade journal that circulated through the dried fruit packers and jobbers, prominent advertisements offering prunes for sale in cartons that carried the "Sun-Maid" trade-mark and in these same issues the trade journals carried advertising matter of California Packing Corporation. It is unlikely that plaintiff was not apprised of these activities, but if actual knowledge of such conduct by the defendant is necessary to be shown, it unmistakably appears in the fact that several pool shipments of nonraisin food products of defendant, bearing the "Sun-Maid" trade-

500

mark, were marketed in October and November, 1926, in cars that contained similar food products of complainant, both shipments having been placed in the railroad cars at the same shipping points and with joint consent of the shippers. In the face of these facts and of others of similar import that are shown by the record, the complainant permitted the defendant without any objection or remonstrance to build up a substantial market for its food products bearing the trade-mark "Sun-Maid"; to expend its money for advertising and promoting sales of its non-raisin goods under the "Sun-Maid" trade-mark, and during the entire time until 1929, remained inactive and indifferent until defendant has been so led to alter its position and change its business methods and is confronted for the first time with a demand by complainant that a court of equity by injunction restrain and prohibit further use of defendant's trade-mark "Sun-Maid" upon its nonraisin food products to the serious prejudice of the defendant.

In my opinion, this demand is devoid of equity and complainant by its laches and acquiescence is estopped from making it. The following statement in Faxton v. Faxon, 28 Mich. 159, that is quoted with approval by the United States Supreme Court in Dickerson v. Colgrove, 100 U. S. 578, 581, 25 L. Ed. 618, is pertinent to the conduct of the parties to this suit and precludes the issuance of an injunction:

"There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

And the Supreme Court itself in the Dickerson Case, supra, used this language:

"The estoppel here relied upon is known as an equitable estoppel, or estoppel in pais. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden."

It follows from the foregoing that my conclusion is that complainant is not entitled to the injunction to restrain the use by defendant of its trade-mark "Sun-Maid" upon its nonraisin food products, and it is ordered that findings of fact, conclusions of law, and a decree for defendant with costs in accordance with the views expressed in this memorandum and pursuant to Equity Rule 70½ (28 USCA § 723) are ordered. Solicitors for defendant will prepare, serve, and present the same under the rules of this court. Solicitors for complainant may submit counter-findings of fact and conclusions of law within five days after service upon them of defendant's proposed findings and conclusions.