## HILL v. NATIONAL BANK.

A., the owner of a parcel of land, consisting of four adjoining lots, three of them having buildings thereon, conveyed it in fee to B. in trust, to secure the payment of certain notes to C. He subsequently used the land and buildings as a paper manufactory, annexing thereto the requisite machinery, and secured by lease a supply of water as a motive-power. Default having been made in paying the notes, B., under the power conferred by the deed, sold the land, excluding therefrom the machinery and water-power therewith connected; and on the ground that they constituted an entirety, and should have been sold together, A., by his bill against C., obtained a decree setting aside said sale. The notes remaining unpaid, C. filed his bill against A. and the lessor of the water-power, to enforce the execution of the trust, and prayed that the land mentioned in said deed, including the fixtures, machinery, and water-power, be sold as an entirety. The court below passed a decree accordingly. A. appealed here. *Held*, 1. That the decree is correct. 2. That the former decree estopped the parties thereto from again litigating the questions thereby decided.

APPEAL from the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Frederick W. Jones* for the appellant.
*Mr. Charles M. Matthews*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a case in equity. On the 15th of January, 1864, Hill executed a deed of trust to Edward Shoemaker, conveying in fee-simple four lots in Georgetown to secure the payment of three promissory notes therein described. The notes were executed by Hill. All of them bore date on the 21st of October, 1863, and were payable to the order of Judson Mitchell and John Davidson. They were each for the sum of $2,210.33, and were to be paid, respectively, at one, two, and three years from date, with interest at the rate of six per cent per annum, to be paid half-yearly. In the event of any default

of payment by Hill, the trustee was authorized to sell the premises for the satisfaction of the debt.  The lots were numbered 1, 2, 3, and 4, and were all contiguous.  On each of three of the lots there was a brick tenement.  Lot 4 was unimproved. The appellant bought the premises with the view of using them for a paper-mill.  This purpose he proceeded to carry out.  He altered the buildings, put in the requisite machinery, and took a lease of water-power from the Chesapeake and Ohio Canal Company, "to be used at his property at the corners of Potomac and Water Streets" (being the premises in question), "and to be used in propelling the machinery of a paper-mill and appurtenant works."  He introduced the water upon the premises, and applied it according to the terms of the lease.

The several notes were duly assigned and transferred to the Farmers' and Mechanics' National Bank.  Hill having made default by allowing all the notes to become overdue without payment, the trustee, under the power conferred by the deed, advertised and sold the real estate as it was when the deed was executed, and irrespective of the water-power and the paper-mill machinery.  A bill was thereupon filed by Hill to set the sale aside.  The Supreme Court of the District sustained the bill and annulled the sale, upon the ground that the realty, the water-power, and the machinery constituted an entirety, and should have been sold together.  The court said: "The complainant placed in these structures, at great expense, all the machinery necessary to a paper-mill, and procured from the Chesapeake and Ohio Canal Company a water-power, which he conveyed underground some three or four hundred feet to the mill property, for the purpose of operating the machinery, and also incurred a heavy expense for an underground tail-race, to conduct the water away."

"The great mischief done, as we think, was not in selling the lots together, but in selling them without reference to the fixed machinery and water-power connected therewith."  "We are governed in our conclusion in setting this sale aside by the fact that both parties had a right to permanent inprovements upon the premises, so far as the same were inalienably fixed upon each other, and that there was no exclusive right of either to divide them."

This bill was thereupon filed by the bank against Hill and the Chesapeake and Ohio Canal Company to enforce the payment of the amount due upon the notes by a decree for the sale of the lots described in the deed of trust, together with the water-power and machinery used upon the premises, if the court should deem that the two latter could be included in the sale. The court below finally decreed " that the said real estate and premises, including said fixtures and machinery, and also said water-power, according as the same are referred to, mentioned, or described in said bill, be sold as an entirety, and as forming and being a paper manufactory, according to a suitable description thereof, to be made for the purpose of a sale by the trustees to be hereinafter appointed to make said sale." This decree was affirmed at the general term. Hill then brought the case here for review, and assigns three errors : —

1. That the court erred in decreeing the sale of lot 4 with the other property.

2. In decreeing the sale of machinery not permanently annexed, without evidence as to the mode, object, and intention of the annexation.

3. In decreeing the sale of the water-power as appurtenant to the land.

The appellant does not deny that the debt is *bona fide ;* that it is overdue ; that it belongs to the appellee ; nor that the decree is for the proper amount. His objections are only those assigned as errors. To all three of them there is a common answer. The points are *res judicatæ* between the parties. In setting aside the sale made by the trustee, upon the appellant's bill filed to bring about that result, the court adjudged, expressly, that the entire premises, including lot 4 and the machinery and water-power, should be sold together as an entirety; and the sale was set aside because it was not so made. The appellant now asks that the decree before us be reversed, because it requires the sale to be made in the manner prescribed in the former case. This cannot be done. The questions raised by the assignments are concluded by the former decree, and both parties are barred from litigating them a second time. Story, Eq. Jur., sect. 1523. The law of estoppel is founded in reason and justice. It makes the acts and con-

duct of a party binding against him whenever it should be so, and will not permit him to assert any claim to the contrary. He thus himself makes the law of his case, and he must abide the consequences. When in the former case the sale by the trustee was challenged by the appellant, he and the appellee were both before the court with their proofs, and the case was fully heard. We have shown the result, and we do not sit here to review or reverse it. The decree upon the points in issue, and decided, is as binding upon the parties as a judgment or decree would be in any other case. Story, Eq. Jur., *supra;* Bigelow, Estoppel, 812–815.

But, irrespective of this consideration, we think the decree appealed from is correct.

It is not questioned that the realty, the water-power, and the machinery constituted a paper-mill. They were therefore, *ex vi termini,* a unit, and could not be disintegrated and the parts sold separately without large depreciation, and a diminished amount in the aggregate of the yield. It is obviously best for all concerned that the property should be sold pursuant to the decree. According to the terms of the lease the water-power could be employed only on the premises, and for driving there a paper-mill. Lot 4 is convenient and important for use in connection with the rest of the property, and hence should be sold with it. That lot is the only vacant and unimproved part of the premises, but it is not on that account the less necessary for various purposes in operating the establishment. *Olcott* v. *Bynum et al.,* 17 Wall. 44. Without the water-power the machinery would be worthless, except to be torn out and removed. By placing it in the buildings in constructing the mill, every part and parcel of it, as between mortgagor and mortgagee, became a fixture and a part of the freehold.

There is some conflict in both the English and American authorities upon this subject; but we think the view we have expressed is the better one, and sustained by the greater weight of authority. The intent and conduct of the mortgagor under the circumstances of this case are conclusive. *Ex parte Astbury,* Law Rep. 4 Ch. 630; *Metropolitan Counties Society* v. *Brown,* 26 Beav. 454; *Christian* v. *Dripps,* 28 Pa. St. 271; *Hill* v. *Sewall,* 53 id. 271; *Seeger* v. *Pettit,* 77 id. 437; *Palmer* v.

*Forbes*, 23 Ill. 301; *Deal* v. *Palmer*, 72 N. C. 582; *Walmsley* v. *Milne*, 7 C. B. N. S. 115; *Powell* v. *Manufacturing Company*, 3 Mas. 459; *Trull* v. *Fuller*, 28 Me. 545; *Corliss* v. *McLagin*, 29 id. 115; *McKini* v. *Mason*, 3 Md. Ch. 187; *Winslow* v. *Merchants' Insurance Co.*, 4 Metc. (Mass.) 306.

*Decree affirmed.*