**WALKER–HILL CO. v. UNITED STATES.**
**No. 9232.**

Circuit Court of Appeals, Seventh Circuit.
May 17, 1947.

KERNER, Circuit Judge, dissenting.

J. Albert Woll, U. S. Atty., and Raymond T. Lopata, Asst. U. S. Atty., both of Chicago, Ill., Sewall Key, Acting Asst. Atty. Gen., and Benjamin H. Pester and A. F. Prescott, Special Assts. to the Atty. Gen., for appellant.

Albert I. Kegan, Esther Kegan, and Louis G. Melchior, all of Chicago, Ill., for appellee.

Before EVANS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

The trial court upheld plaintiff's right to recover $7,495.80 from the Government, on distilled spirits used in 1943, as "drawbacks," because the eggnog product it manufactured was a "food product" and not a "beverage," under Section 3250, Internal Revenue Code, as amended by Section 602(f) of the Revenue Act of 1942. This Section provides:

"Any person using distilled spirits produced in a domestic registered distillery or in industrial alcohol plant and fully tax-paid in the manufacture or production of medicines, medicinal preparations, food products, flavors, or flavoring extracts *which are unfit for beverage* purposes and are sold * * * *for use for other than beverage purposes*, upon payment of a special tax per annum, shall be eligible for drawback * * *." *26 U.S.C.A. Int.Rev.Code, § 3250.*

■ It is apparent that the above statute imposes upon a claimant the burden of establishing (a) that the product is "unfit for beverage purposes," and (b) it was "sold * * * for use other than for beverage purposes."

Treasury Regulations 15, Sec. 190.5 provides:

"The following products are considered as meeting the requirements for exemption from special commodity taxes: * * *

"(d) Flavoring extracts * * *

"(f) Salted wines * * *

"(g) Sauces * * *

"(h) Brandied Fruits * * *

"(i) Food products.—Food products such as mincemeat, plum pudding, and fruit cake where only sufficient liquor is used for flavoring and preserving; and ice cream and ices where only sufficient liquor is used for flavoring purposes."

Plaintiff's eggnog product was made of this formula: in each 200 gallons there were 750 pounds of egg material; 20 gallons of milk; 496 pounds of sugar and dextrose; 65 gallons of 100 proof distilled spirits; and flavoring.

The trial court found as a fact that "Plaintiff's egg nog is a food product unfit for beverage purposes."

"The expert medical testimony of record establishes that normal persons cannot ingest enough of plaintiff's egg nog to cause them to exhibit the effects of alcohol."

"The expert medical testimony of record establishes that plaintiff's product is not intoxicating, and that it is not a beverage."

"The expert medical testimony of record establishes that the milk and eggs in plaintiff's product inhibit the physiological effect of the alcohol therein."

"The labels on plaintiff's egg nog represented it as a food product."

Simple and clear-cut as this issue may seem on its face—the query—is plaintiff's eggnog "unfit for beverage purposes" and sold "for use for other than beverage purposes"—presents a question more vexatious than it at first seems.

Plaintiff's product is of thickish consistency and does not pour from the bottle but must be shaken, or spooned, out. It is to be combined with equal parts of milk or poured over ice in order to make the eggnog drink as that drink is commonly known. It can also be used as a basis for sauces, pies, etc. The directions on its label are set forth in the margin.[1]

It is sold in food stores; it is, however,

---

[1] "The label gives the following directions for use:

"Suggestions for Using Brandy Egg Nog.

"Milk Shake:

½ Egg Nog, ½ Milk. Shake well with shaved or cracked ice, serve in thin 4 oz. glass, garnish with nutmeg.

"Food Beverage:

"(a) Serve cold, full strength, over cracked ice. (b) Fill 3 oz. glass 2/3 full, then float teaspoonful cherry juice on top, do not mix. Delicious!

"Sauce: Used as a sauce over puddings, fresh or cooked fruits, ice cream. Especially good over day-old cake.

chiefly handled in taverns and other retail liquor dispensaries. The undisputed evidence showed its sale was principally to saloons or taverns.[2] If it is non-intoxicating it is so, because sufficient amounts to cause intoxication cannot be consumed, without nausea.

Relied upon by plaintiff is a letter from the Alcohol Tax Unit (Internal Revenue Service, Treasury Department), sent to plaintiff, September 28, 1942. It read

"Reference is made to two samples of Egg Nog submitted to this office for chemical analysis.

"The Deputy Commissioner states that the analysis has been completed, and that the preparation is unfit for beverage use and does not incur special and commodity taxes."

Plaintiff had made a claim for drawback for the period ending December 31, 1942, which claim was first allowed. On reconsideration, the Government pronounced its allowance an error and notified plaintiff it was not entitled to a drawback.

Plaintiff contends, in support of the trial court's finding, that its eggnog product is (1) non-intoxicating and therefore can not be a "beverage" within the statute, nor is it a beverage under any reasonable definition of that term; (2) the Government is bound by the ruling that the product was unfit for beverage purposes.

The Government urges, on the other hand, (1) that ordinary parlance (as well as refined dictionary[3] definitions) declares eggnog to be a beverage, especially at holiday time when the sales of plaintiff's product largely occurred. Nor can it be said that the eggnog was a "food product" as that term is defined by the statute in question; (2) the label on the product shows it may be used for beverage purposes; (3) the Government is not estopped, nor should it be hindered by, an erroneous ruling by one of its employees; (4) the trial court erred in striking testimony of liquor dealers which showed the use to which the brandy eggnog was put.

■ In our opinion the proper construction of the statute impels us to the conclusion that Congress intended the word "beverage" to include a product such as the eggnog product here involved.

■ Conceding it be not intoxicating (not because the alcoholic content is too low to achieve that effect, but because the other elements of the drink are so rich as to cause nausea before sufficient alcohol can be taken to raise the blood alcoholic content high enough) we nevertheless believe the statute intended only those food products to be within the "drawback" benefits which used the alcohol ingredient *solely* for flavoring or preservative or as a food product.

The alcohol content of the eggnog product—65 gallons of 100 proof distilled spirits

---

"Pies:

"Use in making that palate-tickling Egg Nog Pie! Write us for complete recipe."

[2] An exhibit in evidence disclosed that Henry B. Dukas was a large purchaser and distributor of plaintiff's product, which was bottled in his name. He sold the product to wholesale liquor dealers, wholesale fermented malt liquor dealers; and to retail liquor dealers. The Government checked its liquor dealer license records and found in 65 sales to liquor dealers, all but 24 had either retail or wholesale liquor licenses, or both. Of those 24, the far greater number had the word, liquor, or tavern, in their name. The same situation was shown as to the wholesale liquor dealer to whom Dukas sold.

Of the 89 sales which plaintiff made in November and December, 1942 (of which sales 13 were to Dukas) 26 purchasers had retail or wholesale liquor licenses, or both, and of the remaining 50, 22 had the word, liquor, or tavern, in their name. Many of the remainder were probably of the same classification although it is not self-evident from their title.

[3] Funk and Wagnalls New Standard Dictionary, 1942: "A drink made of milk, eggs, and spirits, sweetened; sometimes the same without spirits; uncooked custard."

Webster's New International Dictionary, 1947, "A drink consisting of eggs beaten up with sugar, milk and sometimes, wine."

The Oxford Dictionary, "A drink in which the white and yolk of eggs are stirred up with hot beer, cider, wine or spirits."

The Century Dictionary and Cyclopedia, 1911. "A sweet, rich, and stimulating cold drink made of eggs, milk, sugar and spirits."

to 200 gallons of eggnog (⅓ the volume thereof) was of sufficient substantiality to render the spirits more than mere flavoring or preservative.

Plaintiff contends that the statute is aimed at discouraging consumption of spirits. Taxation, however, is also a "practical" as well as reformative or corrective measure, and the tax, once imposed and collected on the spirits, is not to be refunded unless it is clear that the spirits are used as a minor ingredient in the culinary art or for the other purposes defined by the statute.

We fail to discover a liberality of drawback privileges in either the statute or the regulations. On the contrary, there is prohibition against the drawback unless the product be *unfit* for beverage purposes.

The fact that this eggnog can not be drunk in large amounts does not necessarily negative its classification as a beverage. One sometimes wonders at the capacity of human beings when the product consumed possesses a substantial alcohol content. Then too, many persons do not drink, at one time, intoxicating beverages, in quantities greater than that necessary to nauseate a consumer of the eggnog in question.

Plaintiff insists the eggnog is a food—a factual statement that may, for the purpose of argument, be fully conceded. Being a food does not militate against its being a beverage. Milk is pre-eminent in the field of beverages as well as in foods. Unless the tavern and saloon keepers were buying it as a food it is clear that it must have been sold almost entirely as a beverage. It would be far fetched and illogical to assume that saloon keepers purchased and sold it as a food and not as a beverage.

The statute and the regulation do not give carte blanche exemption to foods; only those foods wherein spirits are used which foods are unfit for beverage purposes, are exempt. If the spirits were used simply as a preservative in the eggnog, or as a flavoring, plaintiff would be skating on more secure ice. But one-third of the product's volume is spirits. A flavor or a preservative agent is usually, we think, a milder, a thinner, a less galvanic tonic.

While cook books are not ordinary reference books in which to search for judicial precedent, a glance at "America's Cook Book" (Scribner's, 1938) lists eggnog twice in its index—once under "beverages" wherein the recipe for simple eggnog contains egg, sugar, milk, vanilla and nutmeg; and, the second time, under "cocktails" (along with Tom Collins, Hot Whiskey Toddy, etc.) wherein the ingredients for New Year's Eggnog is given as eggs, 1½ cup brandy, ½ cup rum, 4 cups milk, 4 cups cream, nutmeg. It is worthy of note that in liquid content, not considering the eggs, there are ten cups of liquid, two of which are spirits—or a one-fifth proportion. If the eggnog product under consideration were combined with equal parts of milk, its spirits proportion would be one-sixth.

Nor do we think the label on plaintiff's product negatives its being a beverage—it tells how to utilize it in making a milk shake, and how to use it as a "food beverage." In the latter instance it is to be served *"full strength* over cracked ice." Full strength calls for one-third alcohol.

We must reject the District Court's finding that "plaintiff's product is not intoxicating, and that it is not a beverage" for two reasons. The court in making this finding labored under the impression that a beverage to fall within this statute must be intoxicating. This, we think, is unsound. The statute does not require that the beverage be intoxicating. Especially is this true if it is non-intoxicating because likely to nauseate a consumer before intoxication occurs. The second reason for rejection of this finding appears in the absence of any evidence to establish or tending to establish the fact that it was not sold as a beverage. With liquor dealers constituting 85% of the purchasers and with the burden resting on the plaintiff, we can not approve a finding which holds that it was not sold as a beverage.

The letter of the Alcohol Tax Unit may not be wholly ignored. It makes us pause in our determination that the instant product was a beverage. The Alcohol Tax Unit is presumably expert in its judgment as to whether an item is within or without the statute. Its determination ought to have

been, and probably was, a considered and experienced one. But, evidently, this action must have been the result of a slip-up, or the Government has since changed its viewpoint as to what constitutes a beverage. It has completely reversed its position.

The rule that an administrative determination such as that appearing in the Unit's letter, does not constitute an estoppel against the Government, is a well-settled one. Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050. It never gives a satisfactory, reassuring feeling, however, for the Government to repudiate the act of one of its agents performed in the course of his duties. The rule against estoppel, however, is based upon the assumption that the Government's welfare, being of greater importance, outweighs individual injustices in particular cases.

Both counsel have cited many precedents, and Words and Phrases and text books give numerous judicial definitions of "beverage" and define "fit" or "unfit for beverage purposes." Those decisions arose out of many different legislative enactments. They are somewhat enlightening, but they are not all of them in complete accord and they do not make for certainty of conviction. They can not be accepted as stare decisis.

Plaintiff has failed to make out a valid claim for a drawback tax refund.

The judgment is reversed.

KERNER, Circuit Judge (dissenting).

I do not believe it was the intent of Congress to impose the full liquor tax on those who use alcohol in non-intoxicating products.

As lucid as is the majority opinion, it has that weakness so fatal to appellate court decisions which attempt to restate the findings of fact of a trial judge.

As I read the statute, it provides that a drawback shall be allowed on all food products unfit for beverage purposes. The District Court found that plaintiff's eggnog is a food product unfit for beverage purposes; that the labels on plaintiff's eggnog represented it as a food product and that in its sales plaintiff made no representations to the contrary. In support of his findings the trial judge had before him the appearance of the product itself. It is thick, viscous and semi-solid. It lacks every characteristic of a drink. In addition the trial judge had expert medical testimony which established the product as rich in food value and non-intoxicating.

It is elementary that if there is evidence to support the findings, they must stand. This seems to be conclusive of the case, for whether the purpose of Congress in enacting the heavy tax on alcohol was to raise revenue or curtail drinking, the eggnog differs from the usual alcoholic drink in that it is non-intoxicating. If the effects of the alcoholic consumption are missing and food values are present, then the eggnog must fall within the meaning of the drawback provisions. The quantity of alcohol used in the product then seems immaterial.

Finally, we have the equity of the statute. In view of this evidence and the existence of the letter from the Deputy Commissioner, later revoked, exempting the eggnog as "unfit for beverage use," the District Court had ample support for its finding. Assuming arguendo, that the eggnog in question is both a food product and a beverage, we are faced with the statutory requirement that it must be "unfit for beverage purposes." As a beverage, this product seems unfit for beverage purposes, because it cannot be taken as an alcoholic drink.

As pointed out in the case of Hoffman Beverage Co. v. United States, Ct.Cl., 147 F.Supp. 71, if the product for which a drawback is sought comes within the language and equity of the statute, then the plaintiff must prevail. I would affirm the judgment.