**SMALE & ROBINSON, Inc.**

v.

**UNITED STATES.**

Civ. No. 14531.

United States District Court,
S. D. California, Central Division.

July 29, 1954.

Keatinge, Arnold & Zack and Ernest J. Zack, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., and Edward R. McHale, Asst. U. S. Atty., Chief of Tax Division, Los Angeles, Cal., for defendant.

MATHES, District Judge.

Plaintiff sues for a refund of excess profits taxes paid for the taxable year ending September 30, 1942. See I.R.C. § 322(b) (6), 26 U.S.C. § 322 (b) (6); I. R.C. §§ 710–736, 26 U.S.C. §§ 710–736, repealed by Act of November 8, 1945, § 122(a), 59 Stat. 568. Defendant denies liability contending that plaintiff's claim for refund, timely filed, does not cover the ground sued on. I.R.C. §§ 3772, 322 (b) (6), 26 U.S.C. §§ 3772, 322(b) (6).

Jurisdiction of this court is invoked under 28 U.S.C. §§ 1340, 1346(a) (1) (i). See 28 U.S.C. §§ 2006, 2402 and Reviser's Note following § 1346, 28 U.S.C.A.; 26 U.S.C. § 3772(d); Lowe Bros. Co. v. United States, 1938, 304 U.S. 302, 305, 58 S.Ct. 896, 82 L.Ed. 1362; Sage v. United States, 1919, 250 U.S. 33, 37, 39 S.Ct. 415, 63 L.Ed. 828.

The evidentiary facts are not in dispute. As shown by admissions in the pleadings and stipulations of the parties, the facts material to decision are these.

On December 15, 1944, plaintiff filed an excess profits tax return for the taxable year ending September 30, 1942. The tax shown on the return was paid. On July 9, 1947, plaintiff filed a timely claim for refund, 26 U.S.C. § 322(b) (6), based on the carry-back of an asserted 1944 net operating loss which, if allowed, would entirely eliminate the excess profits tax for 1942. Id. § 711(a) (2) (L).

On August 2, 1947, plaintiff's representative and defendant's Revenue Agent Burke held a conference on plaintiff's claim for refund. At this conference Burke proposed allowance of only $24,-900 of a salary item of $40,900, which constituted part of the asserted net operating loss for 1944. With the net operating loss carry-back from 1944 thus reduced, a portion of the 1942 excess profits tax liability would have remained. So Burke proposed resort to plaintiff's unused excess profits credit carry-back from 1944. Until this proposed disallowance of a portion of the claimed 1944 net operating loss carry-back, it had not been necessary for plaintiff to invoke any part of the 1944 unused excess profits credit carry-back in order to eliminate all excess profits tax liability for 1942.

The 63-page report of Revenue Agent Burke, dated August 2, 1948, discloses that he audited plaintiff's affairs for the taxable years 1942 through 1945, and employed the unused excess profits credit carry-back from 1944 in computing the 1942 tax. A rough draft of this report was submitted to plaintiff, and on September 28, 1948, Revenue Agent Sullivan held a conference with plaintiff and reviewed Burke's report, but made no change in the use of the 1944 excess profits credit carry-back.

November 8, 1948, was the last day on which plaintiff could file a claim specifying the 1944 unused excess profits credit carry-back as a ground for refund of the 1942 tax previously paid. 26 U.S.C. § 322(g). On that day plaintiff delivered to defendant a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment" [T.D.Form 874] which adopted the assessment as computed in the conference report employing the unused excess profits credit carry-back for 1944. By executing Form 874 plaintiff accepted the recommended overassessment of excess profits taxes in the exact amount as computed in the conference report.

On July 29, 1949, after the statute of limitations had run, 26 U.S.C. § 322 (b) (6), plaintiff, in "amplification" of the timely claim for refund which had been presented in 1947, filed a "Supplemental Statement Perfecting and Completing the Refund Claim as Originally Filed", specifying the 1944 unused excess profits credit carry-back as a ground for refund.

On February 13, 1950, the Commissioner of Internal Revenue partially allowed plaintiff's claim, but eliminated as an allowable ground of refund the unused excess profits credit carry-back from 1944, for the reason that no claim asserting this unused credit carry-back as a ground for refund had been filed within the period of limitations specified in § 322(b) (6) of the Internal Revenue Code, 26 U.S.C. § 322(b) (6).

Notice of disallowance of the part of the claim in question was mailed by the Commissioner on September 5, 1951, and this suit was begun within two years thereafter. 26 U.S.C. § 3772(a) (2).

Three separate causes of action are asserted in plaintiff's amended complaint. All are based upon the same

facts. The first cause of action is grounded upon the contention that "defendant * * * waived the formal requirements of a claim for refund specifying the unused excess profits tax credit carry-back as a ground. * * *"

The second cause of action is predicated upon the theory that the "supplementary claim" filed July 29, 1949, served as a permissible amendment of the timely claim.

And the third cause of action is grounded upon the contention that defendant "is now estopped from asserting the failure of plaintiff to include within its claim for refund the unused excess profits tax credit carry-back."

26 U.S.C. § 322(b) (1) states the general rule that: "Unless a claim for credit or refund is filed by the taxpayer * * * [within the required time] * * * no credit or refund shall be allowed * * *."

While 26 U.S.C. § 322(b) (6), entitled "Special period of limitation with respect to net operating loss carry-backs and unused excess profits credit carry-backs", sets forth the exception applicable at bar that: "If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in [§ 322(b) (1)], the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back * * *."

26 U.S.C. § 3772(a) (1) provides that: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax * * * or of any penalty * * * or of any sum alleged to have been * * * in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

The regulations supplement § 3772(a) (1) with the requirement that: "No refund or credit will be allowed after the expiration of the statutory period of limitation * * * except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 39.322–3(b).

■ Here it is important to distinguish the statute, 26 U.S.C. §§ 322(b) (1, 6), 3772(a) (1), from the regulations particularizing the formal requirements of a claim for refund. As explained in United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619: "The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research." 288 U.S. at page 71, 53 S.Ct. at page 281.

■ The Commissioner is powerless to waive the substantive requirements of the statute, United States v. Garbutt Oil Co., 1938, 302 U.S. 528, 533–535, 58 S.Ct. 320, 82 L.Ed. 405, but he may waive the formal requirements of the regulations. Tucker v. Alexander, 1927, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253. Sound reason for holding that the Commissioner has power to waive such formalities, even though specified in regulations having "the force of law" and binding the Commissioner as well as the taxpayer, United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 265, 74 S.Ct. 499; Chapman v. Sheridan-Wyoming Co., 1950, 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393; Bridges v. Wixon, 1945, 326 U.S. 135, 153, 65 S. Ct. 1443, 89 L.Ed. 2103, is found in the fact that requirements as to form are designed for the benefit of "the officers charged with the collection of the reve-

nue." Nichols v. United States, 1869, 7 Wall. 122, 126, 74 U.S. 122, 126, 19 L.Ed. 125.

Authorized tax officials have the power then to waive regulatory requirements as to procedure and form which are shown to be intended solely for the benefit of their convenience in the administration of the revenue laws. Cf. Angelus Milling Co. v. Comm'r, 1945, 325 U.S. 293, 296–298, 65 S.Ct. 1162, 89 L.Ed. 1619; United States v. Felt & Tarrant Mfg. Co., 1931, 283 U.S. 269, 272–273, 51 S.Ct. 376, 75 L.Ed. 1025; Tucker v. Alexander, supra, 275 U.S. at pages 230–232, 48 S.Ct. at pages 45–46; Kings County Savings Institution v. Blair, 1886, 116 U.S. 200, 205–206, 6 S.Ct. 353, 29 L.Ed. 657.

■ Proof of waiver must be such as to establish "an intentional relinquishment * * * of a known right", Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, so the fact of waiver is not to be lightly inferred. In the complaint at bar plaintiff alleges that: "At all times * * * from * * * July 5, 1947, to and including September 5, 1951, the availability of the unused excess profits tax credit carry-back to plaintiff was known to, considered and acted upon by defendant, and defendant through the Commissioner of Internal Revenue and his agents, waived the formal requirements of a claim for refund specifying the unused excess profits tax credit carry-back ground for refund by doing the following acts:

"1. By representing to the taxpayer * * * on August 8, 1947, and during the period in which a claim for refund specifying the unused excess profits tax credit carry-back could have been timely filed, that such credit * * * would be allowed, and in submitting to the taxpayer a report of that conference, dated August 2, 1948, allowing such credit.

"2. By representing to the taxpayer * * * on September 28, 1948, and within the period within which a claim for refund specifying the unused ex-

cess profits tax credit carry-back could have been timely filed, that such credit * * * would be allowed, and by submitting on November 24, 1948, a report * * * to the taxpayer allowing such credit.

"3. By requiring the taxpayer to execute on Treasury Department form 874 an Acceptance of Over-Assessment, on November 6, 1948, and within the period during which a claim for refund specifying the unused excess profits tax credit carry back could have been filed, in which the calculation of excess profits tax for the taxable year 1942 reflected the allowance of such * * * excess profits tax credit carry back.

"4. By forwarding to the taxpayer on February 13, 1950, and after the taxpayer could have filed a valid claim for refund specifying the unused excess profits tax credit carry back, a Certificate of Over-assessment which * * * disallowed $1,239.02 of the claim for refund and corresponding penalty, on the ground that such sum was barred by section 322–b of the Internal Revenue Code, inasmuch as the unused excess profits tax credit carry back had not been specified in the original claim for refund."

■ The admitted facts sustain these allegations and prompt the inference that this entire course of administrative action was intended to be and was, in the words of Mr. Chief Justice Stone in United States v. Kales, 1941, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132, "a waiver of the requirements of the regulations as to the formality and particularity with which the grounds for refund are required to be stated." 314 U.S. at page 197, 62 S.Ct. at page 219; accord: Angelus Milling Co. v. Comm'r, supra, 325 U.S. at pages 296–298, 65 S.Ct. at pages 1164–1165; United States v. Garbutt Oil Co., supra, 302 U.S. at pages 533–534, 58 S.Ct. at page 323; United States v. Memphis Cotton Oil Co., supra, 288 U.S. at page 71, 53 S.Ct. at page 281; Bonwit Teller & Co. v. United States, 1931, 283 U.S. 258, 264–265, 51 S.Ct. 395, 75 L.Ed. 1018; Tucker v. Alexander, supra, 275 U.S. at pages 231–232, 48 S.Ct. at page

46; United States v. E. L. Bruce Co., 6 Cir., 1950, 180 F.2d 846, 849–850; United States v. Humble Oil & Refining Co., 5 Cir., 1934, 69 F.2d 214, 217; Howbert v. Penrose, 10 Cir., 1930, 38 F.2d 577, 580, 68 A.L.R. 820; Appel v. United States, D.C.E.D.Mo.1951, 100 F.Supp. 140, 143; U. S. Paper Exports Ass'n v. Bowers, D.C.S.D.N.Y.1934, 6 F.Supp. 735, 739; Weihman v. United States, D.C.E.D.Pa.1933, 4 F.Supp. 155, 157–158; and see Annotation, 1941, 86 L.Ed. 142, 143.

Plaintiff further contends that even if the admitted facts are held not to warrant a finding of implied waiver, they nonetheless require that in equity and good conscience defendant should be held estopped "from asserting the failure of plaintiff to include within its claim for refund the unused excess profits tax credit carry back."

The general statement is sometimes made that "there can be no estoppel against the government or its agencies." Spencer v. Railroad Retirement Board, 3 Cir., 1948, 166 F.2d 342, 343; Walker-Hill Co. v. United States, 7 Cir., 162 F.2d 259, 263, certiorari denied, 1947, 332 U.S. 771, 68 S.Ct. 85, 92 L.Ed. 356; N. L. R. B. v. T. U. Phillips Gas & Oil Co., 3 Cir., 1944, 141 F.2d 304, 305; United States v. Globe Indemnity Co., 2 Cir., 1938, 94 F.2d 576, 578; Brown v. United States, D.C.S.D.Mo.1952, 102 F.Supp. 132, 133. But like all generalizations, this one too is apt to mislead if one fails to remember that: "General propositions do not decide concrete cases." Holmes, J., dissenting in Lochner v. New York, 1905, 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937.

It is helpful in considering the subject to remember that there are two doctrines of estoppel: (1) estoppel by record or deed and (2) "equitable" estoppel, variously called estoppel in pais, "quasi" estoppel, or "tax" estoppel. Atlas, The Doctrine of Estoppel in Tax Cases, 3 Tax L.Rev. (1947); Manning, The Application of the Doctrine of Estoppel against the Government in Federal Tax Cases, 30 N.C.L.Rev. 356, 367–368 (1952); Note, The Emerging Concept of Tax Estoppel, 40 Va.L.Rev. 313 (1954).

■■ The doctrine of equitable estoppel is grounded upon misleading conduct. Pomeroy outlines the requisites as being (1) conduct amounting to a representation of material facts, (2) notice of these facts imputed to the party estopped, (3) ignorance of these facts by the other party, (4) an expectation, at the least, by the party estopped that the other party would act upon the conduct, (5) actual reliance, and (6) detriment. 3 Pomeroy's Equity Jurisprudence 191–192, § 805 (5th ed.1941).

Justification for equitable estoppel is found in equity, common honesty and good conscience. Myers v. Hurley Motor Co., 1927, 273 U.S. 18, 24, 47 S.Ct. 277, 71 L.Ed. 515; Mahoning Inv. Co. v. United States, 1933, 3 F.Supp. 622, 78 Ct. Cl. 231, certiorari denied, 1934, 291 U.S. 675, 54 S.Ct. 526, 78 L.Ed. 1064; see: Hill v. National Bank, 1878, 97 U.S. 450, 452–453, 24 L.Ed. 1051; Henshaw v. Bissell, 1873, 18 Wall. 255, 271, 85 U.S. 255, 271, 21 L.Ed. 835; Branson v. Wirth, 1872, 17 Wall. 32, 42, 84 U.S. 32, 42, 21 L.Ed. 566; Union Mutual Insurance Co. v. Wilkinson, 1871, 13 Wall. 222, 233, 80 U.S. 222, 233, 20 L.Ed. 617; First Federal Trust Co. v. First Nat. Bank, 9 Cir., 1924, 297 F. 353, 356; Grand Central Public Market v. United States, D.C.S.D.Cal., 22 F.Supp. 119, 126–127, 129, appeal dismissed, 9 Cir., 1938, 98 F.2d 1023; California Packing Corp. v. Sun-Maid Raisin Growers of California, D.C.S.D.Cal.1934, 7 F.Supp. 497, 499, reversed on other grounds, 9 Cir., 81 F.2d 674, certiorari denied 1936, 298 U.S. 668, 56 S.Ct. 833, 80 L.Ed. 1391. As said in Dickerson v. Colgrove, 1879, 100 U.S. 578, 25 L.Ed. 618: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted." 100 U.S. at page 580, 25 L.Ed. 618. Tacit encouragement by conduct reasonably relied upon has been

held sufficient, Swain v. Seamens, 1869, 9 Wall. 254, 274, 76 U.S. 254, 274, 19 L. Ed. 554; Robbins v. United States, 1937, 21 F.Supp. 403, 407, 86 Ct.Cl. 39, upon the principle that a man should not be permitted to gain an advantage by his own fraud, either actual or constructive. Randon v. Toby, 1850, 11 How. 493, 519, 52 U.S. 493, 519, 13 L.Ed. 784.

The Government has successfully invoked the doctrine of equitable estoppel against taxpayers upon the ground that a taxpayer should not be permitted either to "avail himself of the nonperformance which he has himself occasioned", or to "found any claim upon his own inequity * * *." R. H. Stearns Co. v. United States, 1934, 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647; see Bauman v. United States, D.C.E.D.Mo.1952, 106 F. Supp. 384; Naumkeag Steam Cotton Co. v. United States, 2 F.Supp. 126, 133–135, 76 Ct.Cl. 687, certiorari denied, 1938, 289 U.S. 749, 53 S.Ct. 694, 77 L.Ed. 1495; 10A Mertens, Law of Federal Income Taxation 201, § 60.17 (1st ed.1943).

The question now here is whether a taxpayer can *pari ratione* invoke the doctrine of equitable estoppel against the Government. In Utah Power & Light Co. v. United States, 1917, 243 U. S. 389, 37 S.Ct. 387, 61 L.Ed. 791, it is declared to be the rule that " * * * the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." 243 U.S. at page 409, 37 S.Ct. at page 391, see Maguire and Zimet, Hobson's Choice and Similar Practices in Federal Taxation, 48 Harv.L.Rev. 1281, 1299–1301 (1935); Note, Reliance on Advice of Government Officials, 33 Cornell L.Q. 607, 609 (1948); 10A Mertens, supra, § 60.14.

Many of the cases restate this rule. Like Utah Power & Light Co v. United States, supra, they involve actions of government agents which run counter to the law. The fact that the Government is involved is really not a determining factor in such cases, for no person can be estopped into a position contrary to law. Public policy demands that the mandate of the law should override any doctrine of estoppel. And no amount of misrepresentation can prevent a party, whether citizen or Government, from asserting as illegal that which the law declares to be such. Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; United States v. Stewart, 1940, 311 U.S. 60, 70, 61 S.Ct. 102, 85 L.Ed. 40; Wilber National Bank of Oneonta v. United States, 1935, 294 U.S. 120, 123, 55 S.Ct. 362, 79 L.Ed. 798; Utah Power & Light Co. v. United States, supra, 243 U.S. 389, 37 S.Ct. 387; Commissioner of Internal Revenue v. Union Pac. R. Co., 2 Cir., 1951, 188 F.2d 950; James v. United States, 4 Cir., 1950, 185 F.2d 115, 118–119, 22 A.L.R.2d 830.

Thus it is held that misrepresentations by a government agent can never operate to have the effect of making legal that which the law declares to be illegal. See Spencer v. Railroad Retirement Board, supra, 166 F.2d at page 343; Bowles v. Indianapolis Glove Co., 7 Cir., 1945, 150 F.2d 597; Nichols & Co. v. Secretary of Agriculture, 1 Cir., 1942, 131 F.2d 651, 659; Birmingham v. United States, 8 Cir., 1925, 4 F.2d 508, 509. The same principle is applied in cases involving substantive regulations which are not intended as mere formalities for the convenience of agents of the Government. See Bowles v. Lentin, 7 Cir., 1945, 151 F. 2d 615, 618; Wells Lamont Corp. v. Bowles, Em.App.1945, 149 F.2d 364, 367.

Want of authority of the agent whose conduct is relied upon to bind the Government is another factor to be noted in cases declaring that the doctrine of estoppel cannot properly be invoked against the Government. Of course it is impossible for any agent to have authority to bind the Government contrary to law. See Federal Crop Ins. Corp. v. Merrill, supra, 332 U.S. at page 384, 68 S.Ct. at page 3; United States v. City and County of San Francisco, 1940, 310 U.S. 16, 31–32, 60 S.Ct. 749, 84 L.Ed. 1050; Note, The Statute of Limitations in Tax Cases

and Mistaken Advice by Officials, 61 Yale L.J. 1214 (1952). Such is the rationale of the cases in which the Government's tidelands, United States v. California, 1947, 332 U.S. 19, 40, 67 S.Ct. 1658, 91 L.Ed. 1889, mineral lands, State of Utah v. United States, 1932, 284 U.S. 534, 545, 52 S.Ct. 232, 76 L.Ed. 469, lands held for Indians, Cramer v. United States, 1923, 261 U.S. 219, 234, 43 S.Ct. 342, 67 L.Ed. 622, and timber on Indian lands, Pine River Logging & Improvement Co. v. United States, 1902, 186 U.S. 279, 291, 22 S.Ct. 920, 46 L.Ed. 1164, have been protected against the unauthorized acts of its agents. See Standard Oil Co. of California v. United States, 9 Cir., 107 F.2d 402, 416, certiorari denied, 1940, 309 U.S. 654, 60 S.Ct. 469, 84 L.Ed. 1003.

■■ Lack of authority is fatal to any claim of estoppel based upon the conduct of an agent. Those dealing with an agent of the United States are held to have notice of the limits of his lawful authority. United States v. Stewart, supra, 311 U.S. at page 70, 61 S.Ct. at page 108; Wilber National Bank of Oneonta v. United States, supra, 294 U.S. at page 123, 55 S.Ct. at pages 363, 364. Wisconsin Central R. Co. v. United States, 1896, 164 U.S. 190, 210, 17 S.Ct. 45, 41 L.Ed. 399; Lee v. Munroe & Thornton, 1813, 7 Cranch 366, 368–369, 11 U.S. 366, 368–369, 3 L.Ed. 373; United States v. Norton, 5 Cir., 1935, 77 F. 2d 731. Even though the agent's unauthorized actions benefit the Government in a material way, the Government is not bound to pay for the unauthorized benefit. See Gibbons v. United States, 1868, 8 Wall. 269, 274, 75 U.S. 269, 274, 19 L. Ed. 453, where officers' menaces forced delivery of hay at below-market price; Sutton v. United States, 1921, 256 U.S. 575, 580–581, 41 S.Ct. 563, 65 L.Ed. 1099, where erroneous estimates of inspector resulted in more work than appropriation would cover; and Filor v. United States, 1869, 9 Wall. 45, 49, 76 U.S. 45, 49, 19 L.Ed. 549, where army officers' advantageous but unauthorized lease of premises for quartermaster department was held not binding; cf. United States v. Peck, 1880, 102 U.S. 64, 65, 26 L.Ed. 46.

■ On the other hand, acts or omissions of agents lawfully authorized to bind the United States or direct its course of conduct during a particular transaction may estop the Government. Lindsey v. Hawes, 1862, 2 Black 554, 560, 67 U.S. 554, 560, 17 L.Ed. 265; United States v. Standard Oil Co. of California, D.C.S.D.Cal.1937, 20 F.Supp. 427.

The rule is succinctly stated in Ritter v. United States, 3 Cir., 1928, 28 F.2d 265: "The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government, if the officers have acted within the scope of their authority." 28 F.2d at page 267.

Accordingly the Government has been held estopped by the actions of an agent in the survey of land, Lindsey v. Hawes, supra, 2 Black 560, 67 U.S. 560, 17 L.Ed. 265, in the sale of surplus goods, United States v. Jones, 9 Cir., 1949, 176 F.2d 278, 281, in the payment of funds, Walker v. United States, C.C.M.D.Ala.1905, 139 F. 409, 412–414, in the waiver of a provision in a cost-plus-fixed-fee contract, Branch Banking & Trust Co. v. United States, 1951, 98 F.Supp. 757, 766–769, 120 Ct.Cl. 72, and in the grant of lands, United States v. Big Bend Transit Co., D.C.E.D.Wash.1941, 42 F.Supp. 459, 474, where the acts in question were found to have been lawfully done within the bounds of the agent's authority. See J. Homer Fritch, Inc., v. United States, 9 Cir., 1916, 236 F. 133, 134, reversed on other grounds, 1919, 248 U.S. 458, 39 S. Ct. 158, 63 L.Ed. 359.

■ The same rule is rightly to be applied in tax cases. Vestal v. Commissioner, 1945, 80 U.S.App.D.C. 264, 152 F.2d 132, 135; Joseph Eichelberger & Co. v. Comm'r, 5 Cir., 1937, 88 F.2d 874; United States v. Brown, 6 Cir., 1936, 86 F.2d 798; see: Woodworth v. Kales, 6 Cir., 1928, 26 F.2d 178, 180; Berry v. Westover, D.C.S.D.Cal.1947, 70

F.Supp. 537, 544; but see James Couzens, 1928, 11 B.T.A. 1040.

■ Almost three decades ago the Court in Davis v. Pringle, 1925, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974, pointed to the fact that: "Public opinion as to the peculiar rights and preferences due to the sovereign has changed." 268 U.S. at page 318, 45 S.Ct. at page 550; see Pound, A Survey of Public Interests, 58 Harv.L.Rev. 909, 922–923 (1945); Farrer, A Prerogative Fallacy—"That the Crown is not Bound by Estoppel", 40 L.Q.Rev. 511 (1933). True the Government still "may not be sued without its consent * * *." Lynch v. United States, 1934, 292 U.S. 571, 581, 54 S.Ct. 840, 844, 78 L.Ed. 1434, but where consent has been granted the case should be decided "as between man and man on the same subject-matter." United States v. Arredondo, 1832, 6 Pet. 691, 712, 31 U.S. 691, 712, 8 L.Ed. 547.

■ The United States has long consented to respond to liability for and to be sued on claims for tax refunds, 26 U.S.C. § 3772; Lowe Bros. Co. v. United States, supra, 304 U.S. at pages 305–306, 58 S.Ct. at pages 897–898, and the authorities cited lead to the conclusion that a taxpayer should be permitted to invoke the doctrine of equitable estoppel against the Government in cases where: (1) there has been a waiver of sovereign immunity both as to liability and as to suit, cf. Hopkins v. Clemson Agricultural College, 1911, 221 U.S. 636, 646, 31 S.Ct. 654, 55 L.Ed. 890 (2) the agent whose conduct is relied upon to work an estoppel acted within the scope of his authority lawfully conferred, and (3) application of the doctrine would not bring a result that is either inequitable or contrary to law.

Plaintiff at bar alleges: "That defendant, through its Internal Revenue Agents, allowed the excess profits tax credit carry back in all reports and representations of revenue agents received by * * * [plaintiff]; that such reports and representations were made to * * * [plaintiff] intending that * * * [plaintiff] rely thereon; that * * *

[plaintiff] was ignorant of defendant's intention to disallow the excess profits tax credit carry back until after a claim setting forth this ground of refund could not have been timely filed; that * * * [plaintiff] has relied on such reports and representations of defendant to its detriment since it has thereby been precluded by lapse of time from filing a proper claim for refund specifying such ground. That defendant, by reason of the representations made in such revenue agents' reports allowing such credit, is now estopped from asserting the failure of plaintiff to include within its claim for refund the unused excess profits tax credit carry back."

In the words of defendant's brief, it is admitted that: "Revenue Agent Burke had a conference with * * * [plaintiff's] representative on or about August 8, 1947, whereby Agent Burke proposed a refund based on a net operating loss carry back [for 1944], smaller than * * * [plaintiff] asked because of a proposed disallowance of certain officers' salaries as a deduction. Because of the proposed disallowance, Agent Burke, in computing the excess profits tax liability [for 1942] used a credit that theretofore had not been necessary. His report * * * dated August 2, 1948, took into account in proposing an over-assessment, the [unused] excess profits tax credit carry back for 1944."

By eliminating from his computation of plaintiff's excess profits tax for 1942 a portion of plaintiff's claimed 1944 net operating loss carry-back and inserting in lieu thereof plaintiff's 1944 unused excess profits credit carry-back, the Commissioner through his authorized Revenue Agent Burke proposed and affirmatively represented, by the words and figures placed in the report, that the theretofore unused credit from 1944 would be allowed without plaintiff making a more formal claim. The authorized act of entering the unused credit and the dollar amount on the report sheet, the reliance of plaintiff thereon, and the subsequent lapse of time to plaintiff's prejudice, should bind the Commissioner un-

der circumstances where reliance is warranted.

In invoking the doctrine of equitable estoppel plaintiff has met the burden of showing that his reliance was warranted—that his case is one of the good-faith and prejudicial reliance of a reasonably prudent man under the circumstances. More than a general agency ruling on which a taxpayer relies is present at bar. The proposal by the revenue agent and the acceptance by plaintiff amounted to action taken in concert by two men dealing face to face in good faith. Lawfully authorized administrative action was thus taken under circumstances justifying full reliance by plaintiff. Moreover all the facts were before the Commissioner; he was fully informed and had the freedom of election either to accept or reject the credit as basis for a refund throughout a period of well more than one year during which plaintiff could still have filed a timely and more formal claim. Cf. Wm. W. Bierce, Ltd. v. Hutchins, 1907, 205 U.S. 340, 346, 27 S.Ct. 524, 51 L.Ed. 828.

▮▮▮ Both reason and policy argue that prejudicial reliance of this kind, good-faith reliance upon past and present conduct rather than future expectations, amply warrants invoking the doctrine of equitable estoppel against the Government. Flexibility in the administrative process is in no way hampered by such application of the doctrine to the Government, since flexibility implies the power to adopt and alter future conduct; not the power to renege on good-faith agreements upon which there has been reasonable and prejudicial reliance. Cf. Gaylord v. Comm'r, 9 Cir., 1946, 153 F.2d 408; United States v. La Societe Francaise, 9 Cir., 1945, 152 F.2d 243, 246, certiorari denied, 1946, 327 U.S. 793, 66 S.Ct. 820, 90 L.Ed. 1020.

Citizens expect, and "are entitled to receive, ordinary fair play from tax officials." Stockstrom v. Commissioner, 1951, 88 U.S.App.D.C. 286, 190 F.2d 283, 288–289, 30 A.L.R.2d 443; Black v. Bolen, D.C.W.D.Okl.1920, 268 F. 427, 428, affirmed per curiam, 8 Cir., 1921,

277 F. 1013. The law requires, it is true, that: "Men must turn square corners when they deal with the Government." Rock Island, A. & L. R. Co. v. United States, 1920, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188. But as observed by Mr. Justice Jackson upon dissenting in Federal Crop Ins. Corp. v. Merrill, supra, "there is no reason why the square corners should constitute a one-way street." 332 U.S. at pages 387–388, 68 S.Ct. at page 5.

No valid ground of reason or policy appears for excusing the Government from being bound by the doctrine of equitable estoppel when dealing with a citizen where as here: (1) the Government has waived sovereign immunity from liability and from suit, (2) the agent by whose conduct the Government is sought to be bound acted within the limits of authority lawfully conferred, and (3) the estoppel claimed would give the citizen nothing more than that which admittedly is his substantive right, and would not work a violation of law. Commissioner of Internal Revenue v. McLean, 5 Cir., 1942, 127 F.2d 942, 944; Howbert v. Penrose, supra, 38 F.2d at page 581; see: United States v. Heth, 1806, 3 Cranch 399, 408–409, 7 U.S. 399, 408–409, 2 L.Ed. 479; Powers Photo Engraving Co. v. Commissioner, 2 Cir., 1952, 197 F.2d 704, 705.

The requirements of § 322 were fully met by the filing of a timely claim for refund of excess profits taxes previously paid for the taxable year 1942. The statute itself does not require that any grounds of claim be stated. 26 U.S.C. § 322(b) (1, 6).

By the same token all requirements of § 3772 were satisfied unless plaintiff failed to comply with the requirements of "the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 3772(a) (1). As noticed at the outset, the regulations provide that: "The claim must set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 G.F.R. § 39.322–3(b).

On July 9, 1947, plaintiff filed a seasonable claim for refund of the excess profits tax paid for the taxable year 1942. The time required by law for the filing of this claim did not expire until well more than a year later, on November 8, 1948. 26 U.S.C. § 322(b) (1, 6). The "ground upon which a refund is claimed", as set forth in this timely claim, is an asserted net operating loss carry-back from 1944 which, if allowed, would entirely eliminate any excess profits tax for 1942.

In Lewis v. Reynolds, 10 Cir., 1931, 48 F.2d 515, Judge Phillips pointed out that "the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." 48 F.2d at page 516. Affirming the decision upon certiorari, the Court quoted Judge Phillips' statement with full approval. Lewis v. Reynolds, 1932, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293.

The statement was adopted in United States v. Memphis Cotton Oil Co., supra, followed by the explanation that: "No matter though the claim for refund be specific and limited, the Commissioner is at liberty to audit the return afresh and to strike a new balance as the facts may then appear. Commonly * * * a general audit will be necessary or will be at least a wise precaution, whether the claim is broad or narrow, if the government is to have the benefit of any compensating adjustments. There is little doubt that this conception of duty and of prudence has had recognition and emphasis in administrative practice." 288 U.S. at page 70, 53 S.Ct. at page 281.

■ If what has just been said be true as to claims for refund in ordinary income tax cases, it is *a fortiori* so as to claims for refund in excess profits tax cases generally, and *a multo fortiori* true where as here the claim of refund is based upon carry-backs of net income operating losses or unused excess profits credits from subsequent years.

The record at bar shows that the Commissioner "made an audit of the taxpayer's affairs for the years 1942, 1943, 1944 and 1945." Admittedly the ground of plaintiff's timely filed claim was an asserted "net operating loss * * * for 1944 which, had it been carried back to the year 1942 under the carry-back provisions of the law, would have eliminated all excess profits tax liability for 1942."

Admittedly also, it was proposed as a result of the audit made that a portion of plaintiff's claimed 1944 net operating loss carry-back be disallowed and that, in lieu thereof, an unused 1944 excess profits credit carry-back be used to eliminate all excess profits tax liability for 1942.

In the light of these facts there is room for argument that the timely-filed claim was amended by executed oral modification when the parties substituted the carry-back of 1944 unused excess profits credit for the disallowed portion of the carry-back of 1944 claimed net operating loss. But plaintiff did not rest upon that. Instead plaintiff filed a "Supplemental Statement Perfecting and Completing the Refund Claim as Originally Filed", more formally setting forth the carry-back of unused 1944 excess profits credit as a ground of refund, and adding that: "The purpose of this statement is to reform the claim if in truth and in fact the notice of an operating loss, contained in the original claim, is insufficient as a ground to cover all [1944] carry-back items, i. e., unused excess profits credit and net operating loss."

This "Supplemental Statement," amendatory of the timely claim of July 5, 1947, was not filed until July 29, 1949. The time perspective is aided by recalling that plaintiff's conference with Revenue Agent Burke took place in August of 1947. Agent Burke's audit report comprising 63 pages is dated a year later, August 2, 1948. Plaintiff's conference with Revenue Agent Sullivan was held on September 28, 1948. Plain-

tiff executed T.D.Form 874, a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," on November 8, 1948, which was the last day for filing claim for refund. Agent Sullivan's report is dated November 24, 1948. And it was not until February 13, 1950, that the Commissioner disallowed the claim insofar as based upon a carry-back of the unused excess profits credit for 1944.

Substitution of one 1944 excess profits carry-back for another, in connection with a claim for refund of 1942 excess profits tax which admittedly opened for audit and redetermination plaintiff's income and excess profits taxes for the four years 1942–1945, "is not forcing the inquiry into an unexplored territory, into strange and foreign paths." Bemis Bros. Bag Co. v. United States, 1933, 289 U.S. 28, 35, 53 S.Ct. 454, 457, 77 L.Ed. 1011; United States v. Henry Prentiss & Co., 1933, 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626.

Nor was the Commissioner in any manner "misled or deceived by plaintiff's failure to file formal claim" expressly stating the 1944 unused excess profits credit as a ground of refund. The untimely amendment before the claim was rejected served to add formality and specificity to the original claim, but the Commissioner was already fully informed from the reports of his agents that the ground of claim in question had been adopted by both the agents and plaintiff long before the time for filing claim for refund had expired. Cf. United States v. Kales, supra, 314 U.S. at page 194, 62 S.Ct. at page 218; Bonwit Teller & Co. v. United States, supra, 283 U.S. at page 265, 51 S.Ct. at page 397; United States v. Felt & Tarrant Co., supra, 283 U.S. at pages 272–273, 51 S.Ct. at pages 377–378; United States v. Richards, 6 Cir., 1935, 79 F.2d 797; New England Mutual Life Ins. Co. v. United States, 1931, 52 F.2d 1006, 72 Ct.Cl. 658.

The ground of refund stated in the timely claim called for a general audit in order to determine the correct amount of 1944 net operating loss carry-back. And that audit necessarily disclosed the facts with respect to the unstated ground, namely, the 1944 unused excess profits credit carry-back. See 26 U.S.C. § 711 (a)(2)(L); United States v. Garbutt Oil Co., supra, 302 U.S. at pages 531–532, 58 S.Ct. at page 322. United States v. Andrews, 1938, 302 U.S. 517, 525, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Factors & Finance Co., 1933, 288 U.S. 89, 93–96, 53 S.Ct. 287, 77 L.Ed. 633; Superheater Co. v. Comm'r, 2 Cir., 1942, 125 F.2d 514; United States v. Baltimore & O. R. Co., 4 Cir., 1941, 124 F.2d 344–348; Pink v. United States, 2d Cir., 1939, 105 F.2d 183, 187; Art Metal Const. Co. v. United States, D.C.W.D. N.Y.1929, 35 F.2d 379; Union Trust Co. v. McCaughn, D.C.E.D.Pa.1927, 24 F.2d 459; Addressograph-Multigraph Corp. v. United States, 1948, 78 F.Supp. 111, 121, 112 Ct.Cl. 201; Socony-Vacuum Oil Co. v. United States, D.C.S.D.N.Y., 52 F.Supp. 637, affirmed per curiam, 2d Cir., 1943, 146 F.2d 853; Annotation, 113 A.L.R. 1291.

The question at bar on this phase of the case rides on all fours with the question put in United States v. Memphis Cotton Oil Co., supra: "May a claim for a tax refund which has been seasonably filed, but which fails to state the grounds upon which the refund is demanded, be amended by specifying the grounds at any time before the claim in its original form has been finally rejected, though it be after the time when a wholly new claim would be barred by limitation?" 288 U.S. at page 64, 53 S.Ct. at page 279.

For the reasons stated there, that question is answered in the affirmative here. So it is that a taxpayer can on occasion escape the regulatory prohibition that: "No refund or credit will be allowed after the expiration of the statutory period of limitation * * * except upon one or more of the grounds set forth in a claim filed before the expiration of such period." 26 C.F.R. § 39.322–3(b).

The considerations of reason and policy which sustain the holding in United States v. Memphis Cotton Oil Co., supra, 288 U.S. at pages 70–73, 53 S.Ct. at pages 281–282, are well summarized by Judge Prettyman in Keneipp v. United States, 1950, 87 U.S.App.D.C. 242, 184 F.2d 263: "The rule is that the claim must be sufficient to advise the Commissioner of Internal Revenue as to the items as to which the taxpayer claims error and the grounds upon which the taxpayer makes his claim. If the Commissioner understands the grounds and deals with the claim on the basis of his understanding, the claim is sufficient. A basic public policy is involved in this broad doctrine. Insistence upon nice technicalities of expression on the part of taxpayers in dealings with the Government concerning taxes must certainly compel taxpayers to deal with the Government through technicians. The Bureau of Internal Revenue has long sought to encourage a direct, informal and non-technical presentation." 184 F.2d at page 267.

As said in Angelus Milling Co. v. Comm'r, supra: "If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction * * * of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness." 325 U.S. at page 297, 65 S.Ct. at page 1164.

Under any theory of recovery, what was sauce for the Commissioner in Lewis v. Reynolds, supra, 284 U.S. at page 283, 52 S.Ct. at page 146, should be sauce for the taxpayer in the case at bar.

For the reasons stated, findings of fact, conclusions of law and judgment in favor of plaintiff and against defendant as prayed may be lodged with the Clerk pursuant to local rule 7 within ten days.